The opinion of the Court was drawn up by
Appleton, J.
This is an action against the defendant as an indorser. To prove notice, the plaintiffs introduced the notarial records of Nathaniel Badger, a notary public, and called said Badger, who testified that he made out notices to the defendant, a copy of which was in his book of records and was in due form; that he gave them to Benja *598 min S. Swift, then in his employ, to deliver to the defendant, on the last day of grace; that, after he had delivered notices, or had been informed by Swift that he had delivered them, his notarial records were made out; that this was usually done on the evening of the day when and after such notices were given, on on the next morning, and that his •records in the present case were written out by Swift and signed by himself.
From the voluminous testimony of Swift, it appeared that' he was in the habit of delivering notices for Badger; that, he had no definite recollection of doing it in this particular instance; that, all notices finally handed him for delivery, he seasonably delivered.to the persons to be notified; that, after this was done, he'informed Badger what he had done; that, the information thus given was true; that, he made out the notarial records in controversy at the time, and that they were signed by Badger.
The defendant, though present in Court, was not a witness, and, though notified, did not produce the notice alleged to have been delivered him.
The presiding Judge in his instructions to the jury remarked that, "it was a matter for their consideration, if Swift copied the record in this case, on the same day, whether he did not know that the matters therein stated were true.” This was a very natural suggestion, in the utterance of which nothing objectionable is perceived. Swift’s memory must have egregiously failed, if he did -not know the truth or the falsehood of the record, he was then making.
The objection mainly relied upon is found in the remark "that the fact that the defendant did not appear to testify in the case was a matter they might consider and give such weight to it as they thought it might deserve.”
This presents a question of much importance, and which, as parties are now witnesses, will or may not unfrequently arise, in the trial of causes.
It is' to be observed, that the Judge called the attention of *599 the jury to the fact of the defendant’s not testifying, as one proper for their consideration, leaving its probative force and effect to their judgment, and without indicating any inference to be drawn therefrom, whether favorable or adverse to either party. It was a fact in the case and he called their attention to it. .
If the jury regarded the defendant’s omission to testify as an immaterial and unimportant fact, or if they drew from it an inference favorable to the defendant, he would have no ground of complaint. Certainly not, in case they regarded it as immaterial and unimportant.
They might, however, though not so specifically instructed, have deemed the defendant’s absence from the stand as a circumstance entitled to some weight, (and of that weight they were the special judges,) and as tending to strengthen, in a greater or lesser degree, the case against him. If they did so, would the defendant have just cause of exception?
How stood the case? There was evidence proving, or tending to prove, that a notice of demand and non-payment had been given the defendant. He had been notified to produce it and did not. He was present and was not a witness. If he had never received such notice, he knew it, and, knowing it, would be little likely to omit an opportunity of stating a fact thus conclusively in his favor. The evidence tended strongly to charge him. A -word from his lips might exonerate him from all liability. The pressure of adverse testimony seemed to demand the negation of all notice, if none had been given. If notice had been received, and the defendant knew it, he might well be silent. The utterance of the truth would establish the plaintiffs’ claim. His only defence would be in the failure of proof on the part of his adversary. If he were a witness, he must either state the truth or a falsehood. If he testified truly, his hope of a successful defence was at an end. The defendant does not offer his own testimony. He prefers the adverse inferences, which he cannot but perceive may be drawn therefrom, to any statements he could truly give, or to any ex *600 planations he might make. He prefers any inferences to giving his testimony. Why ? Because no inferences can be more adverse, than would be the testimony he would be obliged, by the truth, to give.
The fact of not testifying was obvious to the jury. They could not fail to perceive that here was evidence tending to charge the defendant as indorser — that, if in fact no notice was received, here was an opportunity to deny its reception — yet the defendant failed to make such denial. A witness on the stand, if he answer evasively, would not the jury regard such evasion as a discrediting circumstance ? If a party is silent when interrogated, is not such silence tantamount to confession ? ' Habes confitentem reum. Here the party declined to become a witness, and to exonerate himself from liability. If he truly could, would he not have been likely to do it ?
No Court could perceive such a fact, without attaching some degree of importance — more or less — to its existence, according to the necessity of the testimony and the emergencies of the defence. No Judge exists, who would not, if the trial had been before him, regard this as a fact bearing on his decision. To direct a jury to disregard it, would be to direct them to disregard a fact existent, material and probative. However much so directed, they could not fail to perceive, and, perceiving, could not avoid regarding it.
The importance of any given fact or circumstance is ever varying — according to the ever changing facts and circumstances with which it is surrounded. The presiding Judge gave no specific directions as to the effect of this fact on the issue or of the inferences to be drawn therefrom. He merely adverted to it, leaving its significance to be measured and determined by the jury. Of all this, the defendant assuredly cannot complain.
In Tufts v. Hathaway, 4 Allen, (N. B.,) 63, the defendant might have been called as a witness, he knowing all the facts, but he was not. The presiding Judge instructed the jury, that they might infer, if the defendant had been call *601 ed, that his evidence would not have benefited his case. In delivering the opinion of the Supreme Court of New Brunswick, Carter, C. J., says, "we cannot consider this a misdirection. It is an inference so naturally arising to a jury themselves possessing ordinary sense and acumen, that such a remark might be hardly necessary; but it is clearly within the discretion of the Judge on the evidence which had been adduced, and on that which had not been adduced.” So, it seems, the omission of the defendant in a criminal case to call as a witness a person in his employ and interest, who could probably explain facts, already proved, tending to show the defendant’s guilt, if capable of being explained favorably to the defendant, may properly be commented on by the prosecuting officer, in his argument to the jury, as bearing upon the question of the defendant’s guilt. Com. v. Clark, 14 Gray, 367. When the truth or falsehood of a fact that is material, is known to a party, to whom the fact is asserted to exist, his omission to deny its existence is presumptive evidence of its truth. Robinson v. Blen, 20 Maine, 109.
It is allowable to permit a notary to state his usual course of proceeding and his customary habits of business. In Miller v. Hackley, 5 Johns., 383, Van Ness, J., says, "the bill, when presented for acceptance, was refused and duo notice given to the defendant. The evidence to this point consisted of the deposition of the notary, who stated that ho presented the bill for acceptance, and protested it for non-acceptance. That it was his usual practice, as a notary, on the evening of the day of the protest, and in all cases of protest, to give notice in writing to the indorsers residing at a distance, by putting such notice in the post-office, directed to the party at his place of residence; and he had no doubt notice in this case was duly given, though, at that distance of time, he could not recollect positively; and that it was possible he might have given the notice to the holder to be forwarded.”
" This evidence was sufficient, in the first instance, to sup *602 port the averment of notice, and there being nothing to affect it, it will support the verdict.”-
Of a similar tenor are the remarks of Shaw, C. J., in Stone v. Wiley, 18 Pick., 561.
It is not necessary to notice particularly the objections to certain interrogatories and answers, in the deposition of Swift, to which exceptions have been taken, as, upon examination, we are satisfied they are entirely without foundation.
. A careful perusal of the evidence in the cause leaves no reasonable doubt on our minds, that the defendant had due notice. The motion, for a new trial, must therefore be overruled. Exceptions and motion overruled.
Rice, Goodenow, Davis and Walton, JJ., concurred.