School Board of Union Parish vs. Trimble.

## No. 1025.

THE SCHOOL BOARD OF UNION PARISH VS. J. E. TRIMBLE.

33 1073
52 1723
33 1073
106 591
33 1073
117 293

The school board of the Parish of Union could not, in accepting the accounts of their treasurer, allow him certain charges in violation of law. Their action was *ultra vires* in that respect, and not susceptible of ratification. The settlement made and discharge granted by them, under such circumstances, is not conclusive and may be assailed and set aside, at the suit of their successors in office, under charges of error and fraud. And the ex-treasurer cannot set up the plea of estoppel, under the facts of the case.

When Defendant could, by his own testimony, prove the existence of a certain fact, which is particularly to his own knowledge, and he fails to do it, the presumption is against him that the fact does not exist.

When both parties have announced that their evidence is closed, the court, in its discretion, may grant to either party the *privilege* of introducing further proof, but it is not a *legal right*, that can be claimed as such.

When an attempt is made to discredit a witness by showing that he made a contradictory statement on a previous occasion, it is not sacramental that the exact time of the alleged contradictory statement should be designated: it is enough that sufficient reference is

68

made to the circumstances that attended the statement, and to the statement itself, so as to place the witness fully on his guard.

Testimony is admissible to prove the sworn statement of a deceased witness, made in a previous suit between the same parties, when said statement does not contradict the official acts of the deceased witness.

APPEAL from the Third District Court, parish of Union.  *Graham, J.*

This case was argued and submitted at Monroe and, by agreement of Counsel, was decided at Opelousas.　　　　　•

*Geo. A. Kilgour, Jr.,* and *Allen Barksdale,* District Attorney, for Plaintiff and Appellee:

First—Parish school boards are vested with power to do those acts specified by law or those acts necessary to carry out specified powers and duties, and no others.

Second—They cannot by any act of theirs allow and ratify an illegal claim for salary, commissions, &c., on the part of their secretary and treasurer, so as to estop their successors from reclaiming amounts thus allowed. Nor can they ratify an act done by the treasurer which it would be illegal for them to do in the first instance. 32 An. 901.

Third—No member of a parish or district school board could be paid any compensation. Sec. 26, Act No. 6, Extra Session, 1870. And secretary and treasurer's salary could not exceed one hundred dollars per annum after 1870, and this amount could only be paid out of local or parish school funds. Sec. 1, Act No. 8 of 1871.

Fourth—A settlement by a school board with an outgoing treasurer will be avoided on proof that said treasurer did not account for all monies going into his hands, and that credits were allowed for claims the school board was without authority to make.

Fifth—Proof that a school treasurer in a settlement claimed credits for himself, not permitted under the law, and received said credits for his own benefit, is proof of fraud.

Sixth—Reopening a case for further evidence is in the discretion of the Court, and where the application was oral and did not show any necessity for reopening the case, the application was properly refused, and especially is this true where a party waited till all his opponent's witnesses were discharged before asking to be heard further.

*John Young* and *Boatner & Liddell* for Defendant and Appellant, and *J. E. Trimble, propria persona:*

First—An amended petition, changing the issues or making averments in derogation of plaintiff's rights, as alleged in the original petition, ought not to be allowed.

Second—The action of officials representing a public body, should be received in evidence to control the subsequent pretensions of the body.

Third—A public officer is not a competent witness to prove the falsity of his official certificate.

Fourth—When by law it is made the duty of an officer to examine the accounts of those entrusted with public funds, he is by law an expert, and his opinion after such an examination is admissible in evidence.

Fifth—A witness, introduced to impeach the testimony of another by proving that statements have been made out of court contradictory to those given in evidence, must be rigidly restricted to those contradictory statements to which the particular attention of the witness sought to be impeached has been directed. Nor can the declarations of the impeaching witness be treated as original evidence, for the purpose of establishing any part of the case of those urging the impeachment, because it is hearsay.

Sixth—The testimony of an attorney already engaged in a case, is entitled to but little consideration, when offered to impeach the testimony of a witness sworn for the opposite

party, by showing that the witness made contradictory statements, to the attorney, to those given in evidence on the trial.

Seventh—When a settlement has been made, the balance agreed upon, paid over and a receipt given, it cannot be set aside except on clear proof of error and fraud.

Eighth—Good faith is always presumed; but fraud and error never is, but must be clearly established beyond doubt.

Ninth—It is only such error as caused by artifice of one party that will enable the other party to annul a final settlement.

Tenth—When a settlement is attacked for fraud and error, only such items can be subject to correction, in respect to which the proof of fraud and error is conducive.

Eleventh—The rules of law respecting error and fraud, apply alike to a public officer, a private individual, or a private corporation.

Twelfth—The doctrine of estoppel applies to the State and to corporations created by it. 28 An. 121, 460; 30 An. 711.

Thirteenth—The judgment should respond to the issues presented by the pleadings.

The opinion of the Court was delivered by

TODD, J. This case was argued and submitted at the recent session of this Court at Monroe, under an agreement that it was to be decided at Opelousas.

The defendant was Secretary and Treasurer of the Board of School Directors of the parish of Union, and a member of the board from 1870 till sometime in 1875. In the year last named, a new board was appointed, and with such appointment defendant's membership and official relation to the board terminated. This succeeding board appointed a committee to examine the accounts of the defendant as treasurer of the previous board, and make a settlement with him. This was done, the settlement made and approved, the reported balance in his hands paid over, and a discharge granted him.

In 1877 new directors were appointed, who instituted an investigation into the accounts of the defendant as treasurer of the first board mentioned, the result of which was the bringing of this suit. The purpose of this suit is to annul and rescind the settlement and discharge referred to, and recover of the defendant $16,099 06, the aggregate of several amounts, alleged to have been improperly allowed him in the settlement, with interests on the same. The nullity of the settlement and discharge is demanded on grounds of error and fraud, set forth in the petition. An amended petition was filed, and properly allowed, setting forth in greater detail the errors, frauds and illegalities in the charges relied on.

The defendant answered by a general denial, averred that the settlement was just and legal, specially denied the charges of fraud and error, and finally pleaded that the discharge was conclusive, and the plaintiffs estopped from going behind the same and making inquiry into matters embraced in such discharge and the settlement preceding it. The plea of prescription was also filed. This plea was sustained, and

the suit dismissed; but on an appeal taken to this Court, the judgment was reversed, and case remanded. It was then tried, and judgment rendered against the defendant for $3066 80 with interest; and from this judgment the present appeal was taken.

I. This being an action for the rescission of a settlement between a school board and an officer thereof, and of a discharge given the officer after such settlement, it is clear that, as these acts and proceedings of the board related to a matter within the scope of its authority, the settlement and discharge in question must be presumed correct, and held as conclusive, both as to the board making the settlement and its successors, unless the acts complained of were in violation of the provisions of the law bearing thereon, or done in fraud or error; and to annul them on such grounds, the causes of nullity must be clearly and satisfactorily established.

It is elementary that all contracts and agreements of whatever kind or description are vitiated by fraud or error. C. C. 1819, 1847. And we know of no distinction recognized by law between the contracts and agreements of private individuals and those of public functionaries, acting in a fiduciary or representative capacity. In regard to the latter,— public officers,—another principle is of special application, that their acts may be invalidated, if, although within the scope of their general powers, they were done in violation of some positive law or prohibitory statute; or, in other words, were clearly *ultra vires*, and of such a character as not to be susceptible of ratification. While recognizing that the power of corporations or public bodies, such as school boards, to make settlements with their officers, implies and includes a certain discretion in deciding what are and what are not proper and legal items in an account, such discretion cannot be extended so far as to cover allowances in direct violation of positive prohibitory laws, too plain and clear to admit of doubt or question. The members and officers of such bodies are bound to take cognizance of such prohibitions, and to know that any action in violation of them would be absolutely null and void, and afford no immunity or protection.

The Board of School Directors is an important feature in the system of public education established by the State. It is the instrumentality by which or through which the school funds, which constitute the very life of the system, are administered and disbursed. Their duties and responsibilities are strictly fiduciary in their character, are clearly defined, and carefully guarded by law.

The board of directors are the trustees; and the beneficiaries of the trust are the educable children of the State. The spirit and terms of the legislative enactments on the subject show that the purpose of the law-maker was to secure a faithful discharge of the trust, and the most

economical administration of the funds upon which it depended. The fraud and error charged, as grounds for rescinding the settlements in question, were alleged to consist of illegal charges, overcharges, concealments and misrepresentations on the part of the defendant, by which the board of directors was deceived; and in error, thus induced, made the settlement with him, and granted him his discharge.

The theory of the plaintiffs with regard to this settlement is this : That, with a view to such settlements, the defendant made out certain statements or accounts, covering all his receipts and disbursements as treasurer of the board, for the whole term of his office; that these statements or accounts were submitted to the board, and formed the basis on which the settlement was made; and that, on their very face, the accounts afforded evidence of the alleged frauds practiced, and the errors caused by such frauds. The theory of the defence, on the contrary, is, that these statements or accounts did not serve as the basis of the settlement, and had little or no connection therewith; that they were not taken into consideration by the committee making the settlement, nor by the board; but that the settlement was made solely from the treasurer's books, warrants and vouchers, produced by him on the occasion. These conflicting theories raise an issue which has an important bearing on the controversy, and one which has been treated in the argument as the vital question in the case. Its importance is enhanced by the fact that all the books, vouchers, warrants and papers connected with defendant's administration of the school fund, and which could afford light on the subject of this settlement, except the accounts or statements mentioned and a few receipts, have all disappeared, without any satisfactory explanation being given of the cause or manner of their disappearance. If these statements or accounts were rendered to the board of directors, and the settlement with the treasurer of the board was made with reference to them, and the investigation had at the time was for the purpose of determining whether these accounts should be allowed or not, then it might not be difficult to ascertain by an examination of them, in connection with the evidence bearing on the charges and items which compose them, and the law regulating such charges, whether the settlement was a correct and proper one, or was amenable to the imputations of fraud and error charged against it. If, on the contrary, these statements or accounts were never rendered to the board; were never considered or used in the settlement; had no bearing on or connection with them, but the settlement was made entirely from the lost books, warrants and vouchers of the treasurer, then, it is easy to see that it would be impossible for any court to determine the character of that settlement and decide whether it was legitimate and proper, or, on the contrary, was fraudulent and illegal.

We are, therefore, compelled, at the very threshold of our investigations,—as was the court below,—to determine this question. To enable us to do so, we have made a thorough and searching examination of the evidence in the record, bearing on this point, which is to some extent conflicting, and this evidence, in connection with other considerations, to be hereafter mentioned, leaves no doubt on our mind that these statements or accounts were made out and prepared by the defendant for the express purpose of the settlement, were submitted to the board, and served as the basis of the settlement.

The reasons for our conclusion are simply these:

The accounts or statements are in the handwriting of the defendant, and purport to cover the receipts and disbursements of the school funds for each ward of the parish, for the entire time that he served as treasurer of the board. It was the duty of the treasurer to account to the board for his administration of the fund; and specially was it important, if not indispensable, that such account should be rendered for the purpose of making a settlement with the board. A settlement with an officer by the board that appointed him,—an officer holding and disbursing public moneys,—necessarily implies an account or accounts rendered by him. A settlement made without such account, would certainly be an anomalous proceeding. Therefore, when we find such accounts in the handwriting of the officer, embracing the whole subject-matter, respecting which, it was his duty to account, and the accounts (or statements) were not shown to have been present at the settlement, and were found in possession of the successor to such officer, we would naturally conclude that they were used in the settlement made with him. The regular order of such proceeding would certainly be first, the rendition of the account or accounts, and next, the verification of them by the entries in the books or by receipts, warrants and vouchers. And in a settlement made in this manner, the account or accounts rendered would certainly be held the basis of the settlement. In addition to this, however, when we consider that the balance shown by these accounts or statements, as then being in the hands of the defendant, increased by two amounts indorsed on one of the statements, and, taken in connection with certain receipts signed by him, make up the exact amount which the board recognized as due by the defendant, and which he subsequently paid over to his successor, no reasonable doubt can exist as to the correctness of the conclusion stated. There is another circumstance, in this connection, of peculiar significance, confirmatory of this conclusion. It is this: as stated, the question whether these accounts or statements were rendered by the defendant, and constituted the basis of the settlement, was a vital one in the suit, upon the determination of which its result mainly depended. The

defendant denied that such was the fact. The real truth touching the issue presented was better known to him than to any living person, and, perhaps, known to him alone. He was on the stand twice as a witness in the case. He and his counsel seemed to have had the keenest appreciation of the important bearing of this question. He had but to open his lips and swear that these accounts or statements were never submitted to the committee or board ; were never regarded or treated as the basis of the settlement ; and such positive sworn testimony from him would have settled the matter ; but, instead of being thus enlightened by the defendant, when the best of opportunities was given him to do so, we find his lips entirely sealed on the subject. It is impossible for the human mind—judicial or non-judicial—not to conclude that, as a witness, he failed to speak on this vital point because the truth, if spoken, would have been fatal to him and his defence. Nor can the effect of his silence in this matter be destroyed by the assertion made, that he would have testified with reference to it and favorably to himself if the *judge a quo* had consented to open the case after the evidence had been closed, and permitted him to take the stand, for the third time, as a witness. And, inasmuch as the ruling of the judge in this respect is complained of, it is but proper that we should consider the bill of exceptions taken to such ruling in this connection.

The record shows that the trial of the case was protracted during two terms of court ; that a great deal of testimony was taken ; that the defendant was twice on the stand as a witness, and testified on each occasion ; that the evidence on the part, both of the plaintiffs and defendant, was formally closed on Saturday evening and duly noted on the minutes ; that on the following Tuesday the defendant moved that the case be re-opened, in order that he might give further testimony, which was objected to, and the motion refused by the judge *a quo* for the reasons stated by him and appearing in the bill. These reasons are to the effect : that all the plaintiff's witnesses had been discharged several days before, and had gone home ; and that to permit the further testimony of the defendant would be unjust to the plaintiffs ; and that the defendant did not inform the court upon what subject he desired to testify, so as to enable the court to judge of the importance or necessity of the evidence. The ruling was entirely correct. Our construction of the law on this point is this : That, after both parties to the suit have announced that the testimony is closed, and this announcement has been formally recorded, neither party has a *legal right* to introduce further evidence ; but the *privilege* of doing so rests entirely within the discretion of the judge—a discretion to be exercised according to the peculiar circumstances of each case, and solely to further the ends of justice.

In the same connection, we notice two bills of exception taken by the defendant to the admission of testimony bearing on this same point, touching the consideration given to the accounts or statements of defendant, by the committee that made the settlement with him.

A member of that committee was called as a witness by defendant, and testified that these statements did not form the basis of the settlement. Another witness was called by the plaintiff to prove that the previous witness had made an entirely different statement to him. The testimony of this last witness was objected to, on the ground that the proper foundation had not been laid for discrediting the first witness, by interrogating him as to the time, place and subject-matter of the alleged contradictory statement. The rule of law undoubtedly is, that a witness must be plainly informed with regard to such alleged previous statement, so that there may be no possibility of his mistaking the conflicting statement referred to, and which he is charged with having made. It is not sacramental that the exact time of the alleged statement should be designated, so that it appears that sufficient reference is made to the circumstances that attended the statement, and to the statement itself, its language and substance, as to apprise the witness clearly of what is referred to, and place him fully on his guard. Though the precise time at which the alleged contradictory statement was made, was not plainly designated in this instance, yet the mention of the place and occasion, and what the statement was, substantially fulfilled all the requirements of the law; and the discrediting testimony was rightly admitted, and properly given the effect it was legally entitled to receive.

The other bill was to the admission of testimony to prove the sworn statement of another member of the school board, who died after the settlement, made in another suit, where the same issue was involved, as to the manner in which the settlement was made, and that it was to a great extent based on statements made by the defendant. The objection was, that if the witness were alive, he could not be permitted to contradict his official acts. The witness could not have been heard to deny that a settlement had been made, or the amount found due thereon, or any other material fact shown in said settlement, which he had officially recognized in writing; but this rule could not be extended to preclude him from telling the manner in which the investigation was conducted, or describing the process and means by which the conclusion had been reached, and the settlement effected. And to this extent only the statement of the deceased witness went; and it was, therefore, properly admitted.

II. Having disposed of these questions touching the issue raised with respect to the accounts or statements of the defendant, found in the record, and their bearing on the settlement made; and having reached

the conclusion that they were so rendered with a view to such settlement, and formed the basis on which it was made, we come next to inquire in regard to the character of these accounts and the charges therein made, and to determine whether, in connection with other evidence in the record, they warrant the conclusion reached by the District Judge, that the settlement was so vitiated by fraud and error and illegalities as to justify its rescission and the judgment rendered by him in consequence of such conclusion.

In dealing with this subject we are greatly aided by the carefully prepared opinion of the judge *a quo*, evincing patient research and a close and critical examination of the various charges and items that composed the account and entered into the settlement. If, in the administration of the school funds entrusted to his charge, the defendant applied portions thereof to his own use or benefit or to other purposes unwarranted or prohibited by law, and in his accounts illegally claimed credit for such unauthorized or forbidden disbursement, which the board approved and allowed in contravention of the plain terms of the statute defining their powers, duties and responsibilities, such acts and proceedings would, of themselves, constitute a constructive fraud on the part of both the board and its treasurer. Besides, if, in making this settlement, the parties plainly and palpably transcended the authority conferred on them by the terms of the statute, defining and regulating their powers, whether such acts were fraudulently or arbitrarily done, they would be *ultra vires*, and for such additional reason stricken with nullity under the views and conditions we have heretofore expressed. C. C. 438, 439.

The board of school directors, of which the defendant was a member and an officer, was but the agent of the State for the administration and disbursement of this trust fund, and its faithful application to the purposes and objects to which it had been consecrated by law, for the benefit of those for whom it was created. No part of this fund belonged to the board or its officers, and they had no right or authority to touch one cent of it except to appropriate it to the objects to which the law devoted it. The provisions of that law were their sole guide, and by its limitations and restrictions they were absolutely bound.

We will proceed to subject the alleged illegal charges in the accounts or statements rendered by the defendant and allowed him by the board, to the test of these plain and recognized rules, which should govern all settlements of this kind.

Though in the petition the aggregate of the alleged errors charged are made to swell up to a very large sum, yet in the argument before this Court, the contest has been narrowed down to a few particulars. These are: 1st. As to sums shown to have been received by the defendant

from the State, and never accounted for at all in the settlement, or not legally accounted for. According to our computation, these sums amount to $900 32, including the deficits in the several different funds, as classified or distinguished by the statute. Of this total, the sum of $661 45, the defendant alleges in his answer and argues in his brief, was the amount of the discount on the warrants which he received and which represented the "interest fund." And the evidence renders it probable that it was so represented to the board at the time of the settlement, and for this reason was allowed. Yet, upon the trial of the case in the court below, though the issue was made with regard to it, there was not a particle of evidence offered to establish the claim of the alleged discount; and the defendant, who, of course, must have known the fact, if it existed, was entirely reticent on the subject when giving his testimony as a witness. Under these circumstances, it was improperly allowed him in the settlement, and the court *a qua* rightly so held. The records of the Auditor's office, an abstract of which is in evidence, show the amount the defendant received in warrants, and with which he should have been charged in the settlement, and is properly chargeable now, in the absence of any evidence that he realized a less amount for them than their face value.

2d.   $869 12 was allowed the defendant in the settlement for contingent expenses, which were explained by a member of the committee which made the settlement, and who was sworn as a witness on the trial of the case, to mean compensation to the treasurer "for trouble had by him in getting the money and disbursing same;" and the further sum of $703 92 allowed for his salary as secretary and treasurer during the term of his service, and further amounts, aggregating $417 44, were allowed him as commissions on the sums disbursed by him; the total allowances on these several accounts amounting to $1990 48.

Respecting the item for contingent expenses above stated, the judge *a quo* in his opinion uses the following language, which we fully indorse:

" It also appears from the said written statements of defendant that he claimed credit for contingent expenses for each year from 1870 to 1875, inclusive, aggregating $869 12, and that this was allowed him in the settlement. According to the evidence of Balton, it was for receiving and disbursing the funds. This allowance by the board was illegal and null, and, if not a fraud, was an unwarranted use of the public funds. The necessary contingent expenses of the board should have been allowed and paid, as the law directs, upon the warrant of the President of the board, drawn upon the treasurer. But, in the country, the contingent expenses of such a body are very small, if anything at all. They generally meet in the courthouse, or some office, without charge; and it is a fact known to every one, whoever observed such things, that there

is absolutely no expense attending such boards. All blank forms, blank books, etc., are furnished by the superintendent of public education at the public expense. Yet the school board paid it, without any warrant of law, *for receiving and disbursing the public school fund.* It was some trouble, doubtless, to receive and disburse the funds; but when the defendant became a member of the school board, he incurred the obligation of performing all the duties of that position without any other compensation than that allowed to any other member of the board as provided for by law. The law allows no such compensation."

It is very evident that this claim for contingent expenses, as well as the other items last enumerated, were really claims for compensation; and were allowed in direct violation of law, which, in express language, forbids such compensation. Act 6, Sec. 26 of 1870; Act 8 of 1871. It is true, that the Act of 1870, which contains the prohibition, was amended by Act of 1871, by which the treasurer might receive and the board allow compensation for his services, but it could not exceed $100 per annum, and it must be paid out of the local or parish school fund. It appears in this case there was, at no time during the term of service of the defendant, any local or parish fund, which is a fund derived from a local or parish tax, as provided by the school laws; but these entire amounts were retained by the defendant out of the general or State funds. No comment is necessary to show the illegal and fraudulent character of this claim. It is impossible not to see the palpable infraction of the law in its allowance.

3d. There are seven receipts in the record, given by the defendant individually to himself as treasurer of the school board, covering sums amounting in the aggregate to several thousand dollars. In the settlement, he was allowed credit for the entire amount. The law expressly requires that all such disbursements, if proper or really made, should be evidenced by warrants drawn by the President of the board on the treasurer; but, notwithstanding the irregularity of such vouchers, they were all allowed by the board, and this allowance was not rejected by the court *a qua* on the trial of this case, except as to certain items amounting in the aggregate to $176. The entire falsity of the receipts to this extent was shown to the satisfaction of the judge *a quo*, who struck out the credit claimed therefor, and we see no reason to doubt the correctness of his conclusion in this respect. The balance of the credits claimed under these singular vouchers, were allowed because there was no evidence to disprove their reality, and the main credit covered by them was admitted by plaintiff's counsel.

These several sums rejected from the settlement, as illegally allowed by the board, make up the amount of the judgment rendered by the lower court against the defendant.

III.  In regard to the plea of estoppel, set. up in the answer and strenuously urged in argument, there might be great force in it, if the premises on which it is based, were correct and well founded.  For instance, if it were a fact that the board of school directors made a full and final settlement with the defendant and gave him a complete discharge, and then took possession of his books, papers and vouchers, and withheld or lost them, and, after such action on their part and after waiting for years, they brought suit to rescind the settlement made and discharge granted, we repeat, there would be much force in the plea, under such a state of facts.  But such are not the facts.  The settlement was made and the discharge given, it is true, but it is a matter of dispute as to whether any books and vouchers and warrants were produced at the settlement, and if any were produced, what they consisted of.  Be this as it may, it is quite certain there is no evidence of any personal delivery by the defendant to the board of any books or papers, or of their taking them into their possession, with the exception of the statements or accounts referred to, on which the settlement was made, and the seven receipts mentioned, which were subsequently found in the keeping of the secretary of the board who succeeded the defendant.  On the contrary, the evidence leaves no doubt that the books were, subsequently to the settlement, taken to the office of the defendant, and were, presumably, in his possession; and, by his own testimony, it is shown that all or a portion of his vouchers or warrants he carried with him to New Orleans.  What finally became of the books, warrants, &c., is a profound mystery.  The defendant certainly gives no satisfactory account of their loss, nor did he do so in response to the proceedings taken against him to compel their production.  In the condition the matter stands, the defendant can claim nothing in his favor on account of the disappearance of these books and documents.

We are satisfied, from the evidence in the record, that this school board matter and defendant's connection with it, and the settlement made, were subjects of great public interest in the parish of Union, as well as of great personal interest to the defendant.  If these books and papers were the means of his protection and vindication against popular clamor and criticism, as well as against personal liability, in the event of an attempt to disturb the settlement, which, surely, under the circumstances, might not seem to him improbable, it might well excite surprise that some care was not taken by him to preserve these books, documents and evidence, which, according to his theory, in the contingency that might arise and, in fact, did arise, would prove of such inestimable value to him.

There certainly was no possible malice or intent on the part of the board to destroy these documents, and it is impossible to believe that

public functionaries would play such a part as to destroy or withhold the documents and then take measures to compel the defendant to produce them. The defendant cannot certainly avail himself of the circumstance of this loss, to claim an immunity from suit when viewed in the most favorable light to him, the evidence fully satisfies us that he at least *contributed* to the loss by his own laches or utter indifference. Besides, as to this question of estoppel, we are thoroughly satisfied that the books and all the vouchers in the world could not save him from liability, for nearly the entire amount adjudged against him. From what we have stated above, it appears that almost the whole judgment was for illegal charges for compensation and the discount claimed on the warrants. As to the former, no voucher or written evidence of any kind could justify or legalize such charges; and, as to the latter, we cannot presume that any missing document could supply more satisfactory proof than the defendant, as a witness, could have furnished by his own testimony, if the fact was that the warrants had been discounted as represented.

IV. There were several more bills of exception taken to the admission and exclusion of evidence, but from the views expressed, it will be to those conversant with the record, apparent that the questions raised by them have little or no bearing in the determination of the case, and the consideration of them becomes unnecessary.

V. There is a motion to amend the judgment, filed by plaintiff, by increasing the amount thereof. This motion is supported by an ingenious statement and calculation, which apparently establish the proposition embraced in the motion; but after a thorough examination and re-examination of the evidence on the points suggested, we are not fully satisfied that there is error in the judgment to the plaintiff's prejudice, but conclude that substantial justice has been done in the matter, and that the judgment should not be disturbed.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.