No. 13,979.

BASTROP STATE BANK vs. SAMSON LEVY.

## SYLLABUS.

1. Pending action by the trial judge on an exception of no cause of action it is within his discretion to permit the filing of an amended petition covering the defectiveness of allegation in the original petition.

2. The book entries of deposits, made by a bank cashier who is dead (his handwriting and death being proven), accompanied by evidence corroborative of the contention of plaintiff that these entries exhibit all the deposits made by defendant, who kept no pass-book, make a *prima facie* showing of the state

and extent of defendant's deposit account, and suffice to shift the burden of proof on defendant to show other deposits.

3. Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them.

4. It is only when the truth is ascertained that the law can be applied in the just settlement of disputes.

5. Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth.

6. When a defendant in a civil case can, by his own testimony, throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, and fails to go upon the witness' stand, the presumption is raised, and will be given effect to, that the facts, as he would have them, do not exist.

APPEAL from the Sixth Judicial District, Parish of Morehouse— *Hall, J.*

*Madison & Madison,* for Plaintiff, Appellant.

*E. Tyler Lamkin (Kernan & Gowland,* of Counsel), for Defendant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff's cause of action is an indebtedness due on account of moneys had and received of it by defendant in the way of overdrafts on his banking account.

The amount sued for is $4,948.82.

The allegation is made that this sum is due for moneys advanced and paid to and for ·defendant upon his written checks, drafts and receipts drawn on the. plaintiff bank from time to time, as appears by a detailed and itemized statement of account annexed to the petition, and the checks, drafts and receipts which the defendant had drawn and the plaintiff had paid, also annexed to the petition.

The statement of account referred to begins with February 3, 1899, and the item of that date is on the credit side, showing a balance at that time to the credit of the defendant, as a depositor and customer of the bank, of $326.83.

It then shows that on February 6, 1898, defendant deposited $250.00; on February 18th, $500.00; and the same amount on the dates, respectively, of March 3rd, April 15th, May 15th, June 15th and July 17th, 1899, making in all a showing of $3,576.83 deposited by the defendant in the period covered by the account, viz.: about one year.

On the debit side the statement begins with an entry of a check of defendant paid on February 6th, 1899, and extending from that date to February 19th, 1900, is a showing of 182 checks and written receipts for moneys drawn by defendant in sums ranging from four dollars (the lowest) to three hundred and eighty-three and 50-100 dollars (the highest)—aggregating the sum of $8,505.65 thus checked out by defendant in the period covered by the account.

At the foot of the account, after striking a balance between total amount deposited and total amount drawn, are the words and figures: "Overdraft, $4,948.82."

We are thus particular in stating what the account annexed to the petition shows, because of an exception of no cause of action filed by defendant, levelled at the want of allegation in the petition, in so many words, that defendant had no funds in bank against which to draw, and that the moneys he owed for were overdrafts of his account.

We hold, taking the petition and account together, that it sufficiently charges the indebtedness declared on to have been for overdrafts of his bank account, and that defendant had not on deposit the funds necessary to meet the checks and orders for money which he drew on the bank.

And we hold, further, that even after the exception of no cause of action was filed, and before it was acted on, it was within the discretion of the trial judge to permit, as he did do, the filing of an amended petition covering the defect (as claimed by defendant) alluded to.

The answer of defendant is, in the main, a denial of the allegations of the original and amended petitions.

There was judgment in favor of the plaintiff for the sum of $350.00, representing one item on the account sued on, and against plaintiff for all the remainder of the indebtedness claimed, rejecting the same as in case of non-suit.

This appeal by plaintiff followed.

*Ruling*—The question which the appeal presents is, on the proof administered, is the plaintiff entitled to recover?

The trial judge thought the case had been made out only to the extent of the one item set forth in his judgment.

Our examination of the evidence has led to a different conclusion. We think the plaintiff has sufficiently sustained the burden of the case —its proof—and is entitled to the judgment it seeks.

It is shown beyond all question that defendant drew the checks and receipts annexed to the petition and that they were paid by the plaintiff bank.

This narrows the issue to the question as to whether defendant had funds in the bank representing the balance ($4,928.82) appearing in the debit column of the account sued on.

It is shown that the account is an exact transcript of the original entries in the books of the bank. It appears that all of the entries on the credit side of the account in the books are in the handwriting of the cashier, and that, with few exceptions, all the entries on the debit side are in his handwriting.

The cashier, himself, could not be produced as a witness, for he was dead.

For each entry on the debit side the bank produced a voucher in the shape of a check, or draft, or receipt, signed by defendant. So that there can be no question of the correctness of the debit side of the account.

Defendant, it seems, kept no pass-book of the bank in which he required entries to be made of deposits to his credit.

The only showing as to deposits, therefore, that plaintiff could make were the entries in its books in the handwriting of the dead cashier. We think this was competent evidence, as far as it went, supported, as it was, by proof of the handwriting of the cashier and his death. Lathrop vs. Lawson, 5 La. Ann. 238; Herring vs. Levy, 4 N. S. 383; Morse on Banks and Banking, p. 481; See also Sec. 295 and foot notes; A. & E. Ency. of Law (2nd Ed.), Vol. 9, pp. 905 and 906 (foot notes); p. 928; p. 896 (foot note No. 6); American Surety Co. vs. Pauly, 72 F. 470, 18 C. C. An. 644; Culver vs. Marks, 23 N. E. 1086; 122 Ind. 554; 16 N. Y. Supreme Court, 239; James vs. Wheaton, 3 McLean, 492; Hodge vs. Higgs, 2 Branch C. Ct. 552; Greenleaf on Ev., 16th Ed., Chap. XI, p. 204, Vol. I; Union Bank vs. Knapp, 15 Am. Dec., p. 181; 3 Pick., 96; Welch vs. Barrett, 15 Mass. 380.

It is considered as having made a *prima facie* showing of the state and extent of defendant's deposit account with the bank for the period covered by the account sued on. It sufficed, with the other evidence adduced by plaintiff, to shift the burden of proof of defendant to show other deposits made during that period, if he claim such, as he is considered to do.

No official of the bank, other than the deceased cashier, had that

connection with the reception and entry of deposits made that would enable them to testify positively, from personal knowledge, as to the deposit account of defendant with the bank; but the testimony of Bussey, the then president of the bank, of Dalton, who was employed in its collection department and who sometimes acted as receiving teller and paying teller, of Madison, the attorney of the bank, of Noff, and other evidence adduced, contain much that is corroborative of what the books show in the way of the limited amount deposited by the defendant compared to the sums he drew on orders issued on the bank, and in the way of the limited financial ability and means of the defendant as sources from which to derive funds for deposit.

Shortly after the death of the cashier, who was a defaulter and had suicided, an effort was made to straighten the affairs of the bank, left in confusion by the cashier.

The defendant, appearing on the books as one of its largest debtors, was called into the bank building and asked concerning his account and the showing of indebtedness against him made by the books.

While he expressed surprise at the discrepancy between the debit and credit side of his account, and stated there must be something wrong, and while not admitting absolutely that he owed the bank anything, he did admit he was aware he had been overdrawing.

He was asked to explain his account and show wherein it was erroneous if he could, and it was offered him to allow any further credit he could show.

With regard to this, the witness, Madison, says: "He would never attempt to explain how the amount represented by his receipts and checks sued on was offset, although I repeatedly asked him to do so, and offered to allow him any credit he could show."

In another part of his testimony Mr. Madison says the defendant did not deny to him that he owed the bank anything. On the contrary, he says, he (defendant) "always stated that he was in doubt about the matter."

We hold, therefore, that the proof administered by the plaintiff, showing positively the amount of funds drawn from the bank by the defendant on his own checks and orders, and showing deposits by him as exhibited by the bank records of $3,576.83, and the source whence came the money so deposited, and showing, further, the probable want of financial ability on part of defendant to respond further in the way of deposits in bank to meet his checks, and showing an admission

by him that he had been overdrawing his account, and showing a sincere effort on part of the bank to get from him an honest explanation and exposition of his dealings with the bank, accompanied by the offer to allow him such further credits as he might be able to substantiate, rebutted whatever presumption there was that the bank, in paying defendant's checks, to the extent of the large amount here shown, had funds of the drawer upon deposit to meet the same, and shifted the burden upon defendant to show that he did have the necessary funds on deposit to do this.

. His effort to establish this fails entirely. Had it been true, the best evidence to show it was his own testimony. Yet, while he was present in court during the trial and assisted his counsel in the defense, he did not take the stand at all, and permitted the case to be closed without one word from him in rebuttal of the showing of indebtedness made against him on behalf of the plaintiff.

Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be properly applied in the just settlement of disputes.

Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth.

When a defendant can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, if the facts exist, and fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist.

School Board vs. Trimble, 33 La. Ann. 1073; Nunez vs. Bayhi, 52 La. Ann. 1719; Pruyn vs. Young, 51 La. Ann. 320.

Where one of the parties to a suit has more means of knowledge concerning a matter to be proved than the other, the *onus* is on him.

Bowman vs. McElroy, 15 La. An. 663; Greenleaf's Evidence, Vol. 1, Sec. 79; Ice Co. vs. Erhman, 36 La. Ann. 841.

So, too, it has been recognized that where the means of proving the negative are not within the reach of the party alleging it, but it is within the power of the opposite party, if the negative be not true, to prove it so, the law will *presume* the proof of the negative averment from the fact that such opposite party withholds or does not produce the proof that the negative is not true. A. & E. Ency. of Law, 1st Ed., Vol. 2, p. 652, Sec. 4.

This would seem to be one of those cases where this principle, or this doctrine, might safely be applied were there need to invoke it.

We have omitted mention in this opinion of many matters arising in the case, and argued at bar and in the briefs of counsel, not deeming a discussion of the same necessary to the decision of the case.

It is ordered and decreed that the judgment appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff, The Bastrop State Bank, do have and recover of the defendant, Samson Levy, the sum of four Thousand nine hundred and fifty-eight and 82-100 dollars, with legal interest from October 29, 1900, until paid, together with the costs of both courts.

Rehearing refused.