His Honor, 'CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
This is a suit by a principal against her agent charging him with actions damaging to her, as follows:
The plaintiff alleges that some time in August, 1913, she employed the defendant, a real estate agent, to fincl a purchaser for a -certain property described in said petition; that on September 16th, her said agent represented to her that he had procured an offer of $2,200 for the property which he thought was the best offer he could get for the property; that she signed an agreement to sell the property at that price to one A. L. Roberts, and that in execution of said agreement, she signed an act of sale on December, 1913, to the same A. L. Roberts for $2,200. That after signing said agreement of sale plaintiff discovered that several days previous thereto her said agent 'had received from one Rizzati an offer of $2,500 for said property which he did not disclose to her, and that on the same day on which she sold her property to Roberts he, Roberts, sold it to said Rizzati for $2,500; that Roberts is a brother-in-law of the defendant and a person interposed who lives in the same house with him; that as a consequence of defendant’s illegal suppression of Rizzati’s offer, she has suffered a loss of $300, which defendant and the surety on his bond 'owe her.
The defendant, John H. Morris, avers that Rizzati’s first offer was only $2,000; that subsequently, on September 16th, Roberts offered $2,200 and his offer was accepted; that “when title was about t‘o be passed it was discovered that the frontage was two feet less than tlie *70 frontage given by tbe seller, and the purchaser thereof being unable to use the property for the purpose for which he intended it, again put the property upon the market;” that on September 18th, Rizzati offered $2,500 which Roberts accepted and for which he made sale to him; that plaintiff’s allegation that at the time he induced her to .accept the $2,200 offer he had already received Rizzati’s offer of $2,500 “is a willfull and malicious falsehood.”
The surety adopted the above answer.
After the introduction of documentary evidence, and the hearing of five witnesses for the plaintiff and two witnesses for the defendant, the trial Judge rendered judgment for plaintiff, and defendants have appealed.
The decision of this case depends upon an appreciation of the facts. The rule of law in such cases is that the judgment of the lower Court is presumed to be correct and will not be disturbed unless manifest injustice has been done.
Roehl’s Digest, Appeal IX (b).
The judgment appears to us to be supported by the testimony of Rizzati and of his daughter, and by that of M. F. Tortorich, a real estate agent, who represented Rizzati in the’ transaction. They swear that it was eight or ten days before the day on which the agreement of salo was signed that Rizzati made the offer of $2,500; and that they understood that they were purchasing from Mrs. O’Neil and never heard the name of Roberts mentioned.
The testimony is sufficient to establish a prima facie case in favor of plaintiff and to shift upon defendants the burden of proving the reality of the sale to Roberts for three reasons.
*71 First, Roberts was an engineer on the Illinois Central Railroad, he was married to Morris’ sister and lived in the same house with him, and was not shown to have any means; second, all the facts of the transaction were more peculiarly within their knowledge and the evidence more within their power. 15 A., 663; 24 A., 200; 30 A., 511; 32 A., 262, 263; 44 A., 1043; 106 La., 586; 16 Cyc., p. 936, No. 4; 1 H. D., p. 495, VIII No. 2. . Third, the moment suspicion was cast upon the actions of Moms, as an agent, it was his duty to explain and to establish his innocence. 15 A., 456; 16 A., 13.
“The utmost good faith is exacted in all the dealings of an agent touching the interests of his principal. ’ ’
13 A., 18.
While the defendants swear that the agreement of sale to Rizzati was made on September the 18th, and the check for his deposit was dated on the same day, the bank deposit slip for this check is dated the 17th, and the check itself is stamped “paid” on the same day, or the day succeeding the date of the agreement of sale with Roberts.
Roberts testifies that he paid the $220 deposit in cash at his home at seven o’clock at night, and he produces a receipt for “two thousand two hundred” as a deposit. But he fails to say how and when he paid' the balance of $180 in cash or in a check. This was a material circumstance to establish the reality of the sale to him. Nor does Morris show that he had deposited in bank $220 deposit as he had deposited the one of $250. There are other contradictions in his testimony.
*72 Opinion and decree, November 22nd, 1915.
■ We do not think that the defendants have shown that the judgment of the lower 'Court is incorrect, and it is therefore .affirmed.
Judgment affirmed.
St. Paul, J., not having heard the argument, takes no part.