PLUNKETT et al. v. LEVENGSTON.

(Circuit Court of Appeals, Seventh Circuit. April 29, 1919.)

No. 2463.

1. TRIAL ⬤⟹211—INSTRUCTIONS—INFERENCES—FAILURE OF PARTY TO TESTIFY.
    In a civil action the jury may properly be instructed that it is justified in drawing inferences against defendants because of their failure to testify, and especially where facts in issue are peculiarly within their knowledge.

2. RELEASE ⬤⟹59—INSTRUCTIONS—EFFECT OF COVENANT NOT TO SUE.
    An instruction as to the validity and effect of a covenant not to sue, executed by plaintiff to certain defendants, held erroneous.

3. PLEADING ⬤⟹409(1)—DEFECTS IN PLEA—WAIVER.
    Whether a covenant not to sue, running to two of the three tort-feasors, can be pleaded as a defense by the two in an action against the three, not determined, because plaintiff sought a determination in this one action of all issues.

4. FRAUD ⬤⟹3—FRAUDULENT REPRESENTATIONS—GROUNDS OF LIABILITY.
    Liability for damages in an action for fraud is not created solely by the presence of a fraudulent intent, but there must have been false representations made with intent to deceive, and they must have been material, made to induce action, and relied upon and acted upon to the injury of the party claiming damages.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Harry M. Levengston against James Plunkett and William Young Conn Humes. Judgment for plaintiff, and defendants bring error. Reversed.

Defendant in error, herein called "plaintiff," was persuaded by plaintiffs in error, herein called "defendants," to purchase a collection of books called a "historical library," for the sum of $65,000. This action is brought to recover damages by reason of fraud alleged to have been practiced by defendants in making the sale.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Plunkett, one of the defendants, met plaintiff in New York state and persuaded him to go to New Orleans where the library was located, the same having been collected by a librarian named Beer. Upon arriving at New Orleans, plaintiff met Humes, who, it was represented, held an option to purchase the books and therefore controlled the sale. Although traveling many miles to personally examine the collection, plaintiff never saw the library; but upon representations made, now in this action asserted to be false and which induced him to buy, plaintiff purchased the library for $65,000.

Plunkett represented that he was to receive 5 per cent. commission for making the sale, but proposed to apply this commission upon the purchase price, provided plaintiff gave him the right to resell the library and share equally in the profits of the resale. The agreed price less the 5 per cent. was thereupon paid by plaintiff and the books were sent to New York.

There is evidence tending to show that the entire library was not worth more than a thousand dollars, and it also appeared that only about $15,000 of the purchase price went to Mr. Beer; the balance being divided among the defendants.

After the sale was made, Plunkett represented that he had prospective buyers from one of whom only a definite offer was submitted. This buyer, it was claimed, would give $150,000 for the library, but payment was to be made by unsecured notes. As a part of the deal, plaintiff was to pay Plunkett a commission of $50,000 cash. Inquiry as to the responsibility of the party who was to execute the $150,000 notes materialized an unnamed woman whose exact residence was unknown. .

When the books reached New York City, steps were taken to catalogue them. During this period, while plaintiff was still ignorant of the nature or value of his collection, Humes advised him that a fraud had been committed and proposed to disclose certain information upon condition that plaintiff would agree not to sue Humes or Tomlinson. Thereupon plaintiff executed to Humes and Tomlinson the desired agreement. All defendants rely upon this agreement as a bar to plaintiff's recovery. It reads as follows:

"It is hereby agreed that no action shall be begun against William Y. C. Humes and Herbert O. Tomlinson, or either of them, by reason of any matters existing at this date by the undersigned.

"Given for a good consideration.

"Saratoga Springs, N. Y., January 21, 1911.          H. M. Levengston.

"Witness: W. T. Butler."

The jury rendered a verdict in plaintiff's favor for $73,423.12, which sum included interest from the date of the transaction to the day of the rendition of the verdict. Thereafter, upon order of the court, this sum was reduced to $65,000 and judgment entered therefor against defendants. Tomlinson has not attacked the judgment in this court, having sought immunity through a discharge in bankruptcy. Defendants assign error:

(a) In not directing a verdict for defendants.

(b) In receiving evidence against objection.

(c) In instructions to the jury.

Donald De Wolfe and Vincent G. Gallagher, both of Chicago, Ill., for plaintiffs in error.

Clifford L. Beare, for defendant in error.

Before EVANS, Circuit Judge, and GEIGER, District Judge.

EVANS, Circuit Judge (after stating the facts as above). We are convinced that the evidence is sufficient to support the verdict rendered in favor of the plaintiff. It will serve no useful purpose to restate in detail all of the evidence upon which we base this conclusion.

Defendants' claim that the representations set forth in the declaration were not actionable—that at least some of them were mere expressions of opinion, while others were promises or statements of proph-

ecy as to future transactions—must also be rejected. While some of these statements, standing alone, were subject to this criticism, there were many actionable representations made. They were made at various times and at different places and by different defendants. It is impossible to set them forth fully. They should be read together. So construed, we are convinced that actionable misrepresentations appear.

[1] *Instructions.*—Complaint is made because the court, among other things, charged the jury as follows:

"You may also take into consideration the fact that it was agreed by the parties here that at least fourteen cases of these books were shipped from the Chicago warerooms of Tomlinson & Co. to New Orleans at or about the time when the transaction took place, and you also had a right to take into consideration the fact that Tomlinson has not seen fit to take the stand in this case. All of those facts may be considered by you. The same is true with the defendants Plunkett and Humes. Those charges were made, and they probably knew as well as anybody in the world actually what took place, and they had a perfect right to take the stand in their own behalf, and give you their version of the transaction, and I say you may take into consideration the fact in reaching your verdict that they did not so testify, although as you know that at different times during the trial appeared here. * * * *"

In giving this charge no error was committed. This was a civil action. The jury was justified in drawing inferences against defendants because of their failure to testify. Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Union Bank v. Stone, 50 Me. 595, 79 Am. Dec. 631; Brown v. Schock, 77 Pa. 471; Bastrop State Bank v. Levy, 106 La. 586, 31 South. 164.

More than this, one of the issues of fact arose over defendants' claim that a librarian of standing had collected these books. On the other hand, it was claimed by plaintiff that a large portion of the library was shipped from Chicago to New Orleans shortly before the prospective purchaser arrived; that these books were sent by Tomlinson & Co. to New Orleans; that they were no part of the library collected by Mr. Beer. The real facts were peculiarly within the knowledge of defendants, particularly Tomlinson, and under such circumstances the failure of a party to testify raises an inference against him. Mantonya v. Reilly, 184 Ill. 183, 56 N. E. 425. We conclude, however, that, in the absence of any special circumstances such as here disclosed, the instruction was proper. Wigmore on Evid. § 289.

The agreement heretofore quoted was pleaded as a bar by all defendants. To this plea, plaintiff filed a replication of non est factum. Upon the trial the execution and delivery of the agreement was clearly established, and to avoid its effect plaintiff introduced evidence tending to show that its execution was secured by fraud, also that it was a conditional release, and further that there was a total failure of consideration for its execution. Against objection the court received this evidence on the assumption that the pleadings were "as broad as the proof." Formal amended pleadings were later filed.

[2] The judge charged the jury in reference to the agreement as follows:

"Now as to the so-called covenant not to sue, you have heard evidence given by Levengston, you have heard Mr. De Lay, you have heard Mr. Butler,

and there have been certain letters read to you which refer to it. Now, if you find from the evidence in this case that Levengston sent that paper or release to Tomlinson and Humes on the basis of a promise on the part of Humes that he would furnish certain evidence of the fraud committed on Levengston, and that he would send an affidavit which would enable Levengston to institute his suit in New York City, and if you find further from the evidence that Humes did not fulfill his part of the agreement; if he made his promise and failed to keep it—then the covenant, so-called covenant, not to sue is no bar to the action in this case.

"But you have all the facts before you. You have all the facts that anybody has. You heard all the evidence. It must be fresh in your mind because it was the last evidence given, and you are to make up your minds from that evidence whether Humes did what he promised to do when he got the covenant not to sue from Levengston. If he did fulfill his promise, if Levengston got what he expected to get and what he was promised, then there is a complete bar as to Tomlinson and Humes. If, on the other hand, this document was procured by false promises, if it was procured by promises that were not fulfilled, then it is no bar to an action on the part of Levengston."

Defendants challenged the correctness of this charge and preserved their rights by exceptions.

This charge was clearly erroneous. There was no total failure of consideration for executing the agreement. In fact, the jury could have well found that a part of the consideration passed to the plaintiff before the agreement was executed.

Nor can we accept as correct the statement that—

"If he did fulfill his promise, if Levengson got what he expected to get and what he was promised, then there is a complete bar as to Tomlinson and Humes. If, on the other hand, this document was procured by false pretenses, if it was procured by promises that were not fulfilled, then it is no bar to an action on the part of Levengston."

If the agreement was obtained through fraud, and we think the evidence presents a jury question on this issue, it was not a bar to plaintiff's recovery. But such issue of fraud was not fully nor correctly presented to the jury by these instructions.

[3] Whether defendant could, against plaintiff's objection, have pleaded a covenant not to sue, running to two of the three or more joint tort-feasors in an action against all wrongdoers, we need not determine. See Duck v. Mayeu, 2 L. R. Q. B. D. 1892, 511; Mason v. Jouett, 2 Dana (Ky.) 107; C. & A. Ry. v. Averill, 224 Ill. 516, 79 N. E. 654; McDonald v. Goddard Grocery Co., 184 Mo. App. 432, 171 S. W. 650, 58 L. R. A. 293 (note); 34 Cyc. 1090; 23 Ruling Case Law, 405, note 13. While we are convinced that this agreement is a covenant not to sue (City of Chicago v. Babcock, 143 Ill. 358, 32 N. E. 271), and not a release, the record before us is not such as would justify us in disposing of the case upon a question of pleading.

The plaintiff sought a determination of the issues raised by the covenant by him executed and invited the court to dispose of all of the issues presented by the pleadings and is not now in this court in a position to avail himself of a rule of pleading which at best is somewhat out of harmony with a practice which demands disposition in one action of all issues capable of being fairly triable in one suit. Neither in the District Court nor in this court did plaintiff raise any

objection to the disposition of all the issues arising out of the execution and delivery of this covenant.

[4] Another assignment of error respecting instructions, we think, is well taken.

At the completion of the charge counsel for defendant called the court's attention to an alleged failure to enlighten the jury respecting "future promises." To this, the court replied:

"Well, I am of the opinion, as I stated on the motion for a directed verdict, that, if the jury finds in this case that there was a deliberate planned fraud, then it is immaterial what means were used to induce Levengston to give up his money; whether it was a promise in the future, whether it was an expression of opinion, whether it was saying the boxes were open, look at the books. It doesn't make the slightest difference what the conspirators did to bring about the desired result, if they intended to commit a fraud, and if they unlawfully intended to induce the plaintiff to part with the money."

To this charge defendant excepted.

This instruction was clearly erroneous. Liability for damages in a fraud action is not created solely by the presence of a fraudulent intent. There must, of course, have been false representations made with intent to deceive, and such representations must have been material, made to induce action, relied upon, and acted upon to the injury of the party claiming damages.

While it is true the judge had previously defined the elements necessary to make out a case of fraud accurately, this later incorrect statement of the law could not but mislead the jury to defendants' prejudice.

The judgment is reversed.