215 So.2d 805

**Gerald D. RUTHARDT et al.**

**v.**

**James R. TENNANT.**

No. 48981.

Nov. 12, 1968.

Rehearing Denied Dec. 16, 1968.

Fish & Montgomery, Springhill, for applicant.

Ford E. Stinson, Benton, for defendant-respondent.

SUMMERS, Justice.

Gerald D. Ruthardt and Jerry L. Dennis instituted this tort action jointly to recover for personal injuries, medical expense and loss of earnings sustained by Ruthardt and for property damage incurred by Dennis. The injuries and property damage are alleged to have resulted from a collision which occurred between the 1957 Chevrolet owned by Dennis, being driven by Ruthardt, and a 1953 Mercury station wagon driven by the defendant James R. Tennant.

At the trial there was judgment in favor of Ruthardt against Tennant for $131, the amount of Ruthardt's medical expense, and in favor of Dennis against Tennant for $1,125 as damage for the destruction of the automobile. On appeal the Second Circuit reversed, denying the demands of both Ruthardt and Dennis. Only Dennis applied to this court for review. The Court of Appeal judgment rejecting Ruthardt's claim is therefore final. La.App., 203 So.2d 389. Writ granted, 251 La. 680,.205 So.2d 443.

The collision in question occurred at approximately 10:30 on the night of October 8, 1963 on East Texas Street in Bossier City, Louisiana. At the scene of the accident East Texas Street is a hard-surfaced, four-lane thoroughfare running east and west. The two eastbound lanes are separated from the two westbound lanes by a "neutral strip", or divider, consisting of a slightly raised portion of the pavement outlined by yellow stripes.

Just prior to the accident, Tennant was proceeding easterly in the northernmost of the two southern or eastbound lanes. When he arrived at a point opposite the J & J Lounge located north of East Texas Street he turned left across the neutral strip. While proceeding over the two northern or westbound lanes to reach the J & J Lounge, and upon entering the northernmost of these two lanes, his Mercury station wagon was struck by the 1957 Chevrolet driven by Ruthardt.

Moments before the collision Ruthardt was driving the 1957 Chevrolet belonging to his friend Dennis, traveling in a westerly

direction in the northern lane of East Texas Street bound from Blue's Lounge to the Amber Inn. When he reached a point approximately 1,000 yards east of the J & J Lounge he became involved in a drag race with a red Chevrolet whose driver or owner is not disclosed by the record. While racing side by side with the red Chevrolet at a speed of 90 to 100 miles per hour, Ruthardt suddenly saw the station wagon driven by Tennant in his path. He applied his brakes, skidded 135 feet and crashed into the side of the station wagon. As a result Ruthardt received minor injuries and the automobile belonging to Dennis was demolished.

■. Lieutenant Joe Usrey, one of the officers investigating the accident, testified that Tennant had been drinking that night, but he made no charges to that effect because he "didn't think he drank that much." An affidavit was made by Usrey, however, charging Tennant in the City Court with reckless operation of a vehicle. Tennant entered a plea of not guilty, and he was tried and convicted. He then appealed to the district court where the conviction was affirmed. The evidence of this charge and conviction was objected to and the evidence must be rejected.

■ In civil cases it is inadmissible to show that one or the other of the parties was charged by the police with a traffic violation or convicted. This would be mere-

ly the opinion of the officer or the judge, as the case might be. Trials and convictions in traffic courts and possibly in misdemeanor cases generally are not always trustworthy for they are often the result of expediency or compromise. To let in evidence of conviction of a traffic violation to prove negligence and responsibility in a civil case would unduly erode the rule against hearsay. Davis v. Bankston, 192 So.2d 614 (La. App. 1966); McCormick, Evidence § 295 (1954); Pugh, Work of Appellate Courts —1966–1967, 28 La.L.Rev. 436 (1968); Uniform Rules of Evidence, R. 63(20) 1953; cf. Model Code of Evidence, rule 521 (1942).

In this tort suit the trial court gave no reasons for its judgment in favor of Ruthardt and Dennis. However, in reversing the trial court judgment, the Court of Appeal declared that the "unreasonable speed" at which Ruthardt was driving was the sole proximate cause of the accident.

Dennis asserts in his brief that if it were conceded that Ruthardt was negligent in driving at an excessive rate of speed, his negligence was nevertheless not the *sole* proximate cause of the collision and the damage to his automobile. He argues that Tennant was also negligent and that the negligence and fault of both concurred to cause the damage for which he seeks reparation. Thus, under his theory, he may recover against either or both of the parties

who are jointly negligent, and his claim against Tennant should succeed.

We have no hesitancy in saying that the court of Appeal correctly found that Ruthardt was negligent. It was wild and reckless conduct for Ruthardt to drag race at 90 to 100 miles per hour in violation of the 45 mile speed limit prevailing at this heavily traveled thoroughfare. His conduct was grossly negligent, amounting to a wanton breach of the duty he owed to the owner of the automobile he had borrowed to use the vehicle in a careful and prudent manner and to return it in the same or like condition.

Although we agree that Ruthardt was negligent, we cannot agree that his negligence was the *sole* proximate cause of the damage to the 1957 Chevrolet belonging to Dennis. In our opinion the contention of Dennis is meritorious, and Tennant was also negligent and his negligence continued to the moment of the accident. The negligence of both drivers was, therefore, simultaneous and concurred to bring about the harm complained of, making them joint tort-feasors liable individually, jointly and in solido to Dennis for the damage to the 1957 Chevrolet.

The conclusions are predicated upon the fact that in turning left across the neutral strip Tennant violated Section 82 of Title 32 of the Revised Statutes, the Highway Regulatory Act, which provides:

"A. Whenever any highway has been divided into two roadways by a median, physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right hand roadway and no vehicle shall be driven over, across or within the median, barrier or section, except through an improved opening or at a cross-over or intersection established under authority of this Chapter.

B. No vehicle shall cross the painted center line of any multiple lane highway, except for the purpose of making a turn."

To avoid the consequence of this violation Tennant points out that the traffic police did not enforce Section 82 at this location, and it was the practice of motorists to cross the neutral strip; this permissiveness, he says, excuses his misconduct. The answer is that he is not entirely exonerated of negligence for disobeying a law designed for the safety of motorists when the law is not enforced. If the laxity of local enforcement is to give Tennant any comfort, it can only come from the fact that a court may reduce the degree of his negligence; it would not exculpate him entirely.

Another issue presented by the briefs and record, which we consider significant to the result we have reached, is

Tennant's contention that the place where he turned should be recognized as an intersection which he pre-empted and thereby gained the right of way which Ruthardt disregarded. This contention is without merit because no street entered East Texas Street at this point, and Tennant's destination was a private driveway leading to the J & J Lounge. Assuming, however, that the practice, indulged in by the police, of crossing the neutral strip made this site an intersection in legal contemplation, we then find that Section 122 of the Highway Regulatory Act was breached by Tennant's left turn. That regulation declares:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard."

Again, this violation of a statute designed for the safety of motorists makes Tennant guilty of negligence per se.

Aside from any statutory regulation, however, the courts of this state have established rules which clearly define the requirement that a motorist on a much traveled street, like this one, who desires to make a left turn across the street, must be *particularly careful* and on the alert for cars meeting or overtaking his; and must not make the turn *until he is sure* it can be negotiated in safety. Payne v. Prestridge, 16 La.App. 479, 133 So. 512 (1931). The motorist making a left turn across the path of oncoming traffic between intersections has been required, in some applications of the rule, to use *extraordinary precautions,* as the motorist coming from the opposite direction on his own side of the road is not required to anticipate a sudden turn into a driveway. Shirley v. Caldwell Bros. & Hart, 183 So. 581 (La.App.1938). Courts have ruled that *the burden rests heavily* on the motorist who desires to make a left turn to explain how the accident occurred and to show that he was free from negligence. Jacobs v. State Farm Mutual Automobile Ins. Co., 191 So.2d 908 (La.App. 1966). A number of cases have recognized that one of the most dangerous maneuvers on a highway is the left turn, and, particularly, where it is attempted in the face of oncoming traffic. Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Kugler v. Castjohn, 201 So.2d 9 (La.App.1967).

Tennant was, therefore, negligent in failing to obey the traffic regulations enacted by the legislature as a safety measure and in failing to obey a rule of general negligence recognized and applied on numerous occasions by the courts. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Note, 23 La.L.Rev. 142 (1962); Robertson, Intervening Negligence—Proxi-

mate Cause, 23 La.L.Rev. 281 (1963). And we are unable, by the nature of this occurrence, to separate the negligence of Tennant and Ruthardt from the results complained of. Prosser, The Law of Torts, Sec. 42 (1964).

In Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 we said: "To be actionable the cause need not be the sole cause, but it must be a cause in fact, and to be a cause in fact it must have a proximate relation to the harm which occurs and it must be substantial in character."

■ Since Tennant's negligence operated continuously to the moment of the collision, the fact that the active and substantially simultaneous operation of the effects of Ruthardt's tortious conduct is also a substantial factor in bringing about the harm does not protect Tennant from liability. Both are answerable to Dennis, individually, jointly and in solido. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., supra; Restatement (Second) of Torts § 439 (1965); 2 Harper & James, The Law of Torts § 20.2 (1956).

■ It is also argued on behalf of Tennant that Ruthardt's negligence while driving the car is imputable to the owner Dennis making Dennis contributorily negligent thus barring his recovery against Tennant. No evidence supports the contention that Dennis loaned the vehicle to Ruthardt or

that he knew Ruthardt was in his car at the time. It is true they were friends and Ruthardt had used the automobile before, but that evidence falls far short of proving that Dennis had loaned his automobile to Ruthardt on this occasion. On the night in question Dennis left his car in front of Blue's Lounge and went to the J & J Lounge in another car. He did not leave his keys in the car and did not tell Ruthardt that he could borrow it. When asked how it happened, Ruthardt testified "I took the car", for a key was not necessary to turn the ignition on.

■ If the record would permit a finding that Dennis had impliedly loaned his automobile to Ruthardt, it would not follow that Ruthardt's negligence could be imputed to Dennis so as to bar his recovery against another party responsible for damage to his car. Ruthardt was not engaged in a mission for or on behalf of Dennis, he was not an agent or employee or in any other respect acting under the control or direction of Dennis or for the benefit of Dennis. Nor is there a showing that Ruthardt was known to be a reckless driver or a drinker. In our opinion Ruthardt was foolhardy, and he was seeking excitement and thrills to gratify his own sensibilities. Dennis was not a part of this escapade; he was unaware of what was going on and could not control Ruthardt's actions; he was not responsible in fact or in law. The principle applicable.

here was set out in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963): " * * * the negligence of one person cannot be imputed to another person not guilty of personal negligence in the absence of a legal obligation on the part of the latter to respond for the fault of the former." No legal obligation compels Dennis to bear the responsibility for one who has borrowed his car under the circumstances of this case. Ruthardt's negligence, therefore, cannot be imputed to Dennis to bar the right of Dennis to recover from Tennant.

Another circumstance supporting our conclusion that Tennant was negligent is his failure to testify at the trial and explain his conduct or otherwise speak in mitigation of his negligence. For it has long been the rule in this State that when a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist. Bastrop State Bank v. Levy, 106 La. 586, 31 So. 164 (1901). The rule is founded upon fundamental and salutary principles essential to the ends of the law. Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be applied in the just settlement of disputes. Litigants owe a duty to assist in every legitimate way to elucidate the truth of the controversy. Bastrop State Bank v. Levy, supra.

For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court awarding damages in the sum of $1,125 to plaintiff Jerry L. Dennis against the defendant James R. Tennant is reinstated and made the judgment of this court. Costs to be paid by defendant.

BARHAM and GLADNEY, JJ., recused.

Rehearing denied.

BARHAM, J., recused.