290 So.2d 854 (1974)
B. SEGALL COMPANY, INC.
v.
J. C. TRAHAN.
No. 53583.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
*855 Robert J. Donovan, Jr., Naff, Kennedy, Goodman, Donovan & Parnell, Shreveport, for plaintiff-applicant.
Clarence L. Yancey, Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-respondent.
BARHAM, Justice.
B. Segall Company, Inc., a plumbing and air conditioning contractor, is seeking recovery of $5,576.39 against J. C. Trahan for remodeling work done on Trahan's home. The sum is claimed to be due under a written contract entered into by these parties on October 18, 1966.
The bulk of the contract is on a standard printed form of the American Institute of Architects. The controversy arose over a typewritten addendum which had been dictated by Trahan's architect, Lester C. Haas, without the aid of an attorney, after its meaning had been explained to both parties. The addendum reads as follows:
"Revised contract proposal shall serve as the guaranteed maximum cost for the *856 work, as modified; and the contract shall be performed on the basis of the actual cost of all labor and materials plus overhead expenses, at 15% of the cost of all materials, and profit at 10% of all labor and materials * * *."
The dispute is over the meaning of "materials" and "labor" in computing "overhead expenses" and "profit".
Segall contends the said paragraph was a standard type of paragraph in the area with a particular meaning within the trade and industry. Segall alleges it is entitled to receive as overhead expenses 15% of the cost of materials used by it, as well as 15% of the materials and labor supplied by its subcontractors. The only expense excluded from the overhead charge would be the labor performed by the general contractor, Segall. As to the profit computations, Segall maintains it is entitled to a profit of 10% on all labor and materials and that overhead charges are included under materials.
Trahan alleges the language of the contract is clear and unambiguous, that the terms "materials" and "labor" have certain fixed meanings, and the contract should be enforced as written. He contends Segall is entitled to only 15% of the cost of all materials that went into the job, regardless of who placed them there, as overhead expenses. Profit calculations were to exclude the overhead expenses.
Judgment was rendered by the trial court in Segall's favor for the amount sought, plus interest from judicial demand as prayed for in its petition.
The Second Circuit Court of Appeal amended the judgment so as to reduce the amount of the award from $5,576.39 to $2,086.90, and affirmed as to the interest awarded from the date of judicial demand. The court agreed with Trahan's contentions that labor should not be included in the overhead charges, and that profit should not be calculated on overhead. 276 So.2d 340 (La.App., 1973).
We granted a writ of review on Segall's application. 279 So.2d 202 (La.1973).
Segall's basic contentions are three-fold. He first alleges that in the building industry and trade in the Shreveport area, in a "cost plus" contract the words "labor" and "materials" have certain precise meanings relative to the general contractor and as to the subcontractors which are contrary to the normal usage of a layman. Secondly, he contends the disputed provision in this litigation is ambiguous; thus the parol evidence introduced was admissible to explain the true intentions of the parties. Alternatively, he argues the contract should be reformed to show that the overhead and profit be computed in the manner contended by him since the parol evidence established mutual error or mistake.
The only witnesses called were those whose testimony was favorable to relator, Segall. Respondent contented himself with cross-examination; he did not take the stand. The only material that evidences his position at all is a letter written by his general counsel, to Segall's prior attorney, some two years before the case went to trial (Exhibit D-1). At the trial itself, Lester C. Haas, Trahan's architect, testified in great detail as to the disputed provision.
Haas testified that the typewritten paragraph was a standard one in the building trade in the area, that he dictated it, that no attorney had any part in its formation, that the term "materials" included the total price charged by the subcontractors to the general contractor, Segall, (thus both labor and materials were included in the overhead charge). The only charge excluded from overhead was the labor of the general contractor, Segall, as shown on its payroll. The profit charge of 10% was to be computed on labor, materials, and the overhead charge (items of overhead became materials' costs for this computation). Haas also testified that he explained the *857 manner of computing the overhead and profit charges to Mr. Trahan; that so far as he knew Trahan understood these calculations. Haas further testified, as did Segall, that on the 23 bills or estimates sent by Segall to Trahan the overhead and profit were computed in the above manner. Additionally, Haas stated that Trahan made no complaints to him during the time when the work was being done, nor as long as he was on the project, as to the manner of computations.
Ralph Segall, president of the contracting company, was the only other witness to testify as to the basic dispute. He substantiated Mr. Haas' testimony in all matters concerning the disputed provision and the calculations made thereunder. He also stated he had no disagreement with Mr. Trahan about the overhead and profit charges while the job was being done.
The testimony of relator's witnesses as to what took place before, during and after the contract formation, as to the relationships and business transactions between the parties, and as to the interpretation of the contract, stands uncontradicted. Accordingly, the rule that evidence of witnesses which stands uncontradicted must be accepted as true, must be applied in this case. Olds v. Ashley, 250 La. 935, 200 So. 2d 1, 4 (1967) and the cases cited therein. The rule as expressed in Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968) at 810 is also applicable to this case:
"* * * For it has long been the rule in this State that when a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist. Bastrop State Bank v. Levy, 106 La. 586, 31 So. 164 (1901). The rule is founded upon fundamental and salutary principles essential to the ends of the law. Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be applied in the just settlement of disputes. Litigants owe a duty to assist in every legitimate way to elucidate the truth of the controversy. Bastrop State Bank v. Levy, supra."
Trahan was the only party who could testify as to his understanding of the contract and its addendum. Since he did not testify, it is presumed that the facts as he asserts them do not exist. We accept Segall's contention that the addendum as worded in this cost plus contract had a particular meaning within the Shreveport building trade.
In view of the above findings, we are of the opinion that there is merit in relator's other contentions. As we said in Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957), written instruments are to be reformed when such instruments, as written, do not express the true contract of the parties. See Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948).
The language of the contract is ambiguous. Three provisions of the Civil Code are pertinent to this case:
"Art. 1947. Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong."
"Art. 1950. When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
"Art. 1957. In a doubtful case the agreement is interpreted against him who has contracted the obligation."
When these articles are applied to the case at hand, the testimony of Segall and Haas *858 proves the true contract. Their testimony is admissible under the Agurs v. Holt rule, supra, which states the burden is on the party seeking reformation to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Accordingly the uncontradicted testimony of Haas and Segall was properly admitted into evidence; that evidence is convincing as to what the parties intended.
We conclude relator has met the burden by clear and convincing proof that there was mutual error and mistake justifying reformation of the contract in his favor. The decision of the Court of Appeal is reversed. The judgment of the district court is reinstated. All costs are assessed against respondent.
SANDERS, C. J., and SUMMERS, J., dissent for the reasons assigned by MARCUS, J.
MARCUS, J., dissents with reasons.
MARCUS, Justice (dissenting).
The contract involved in this litigation is on a standard printed form of American Institute of Architects. It provides that the owner shall pay the contractor for performance thereof a sum not to exceed $41,000.00. This litigation arose on account of a disagreement between the parties as to the interpretation of a provision of a typewritten addendum to the contract. The provision in controversy is as follows:
"Revised contract proposal shall serve as the guaranteed maximum cost for the work, as modified; and the contract shall be performed on the basis of the actual cost of all labor and materials plus overhead expenses, at 15% of the cost of all materials, and profit at 10% of all labor and materials. * * *"
The disagreement is over the meaning of "materials" and "labor" in computing "overhead expenses" and "profit." Plaintiff Segall contends that it is entitled to receive as overhead expenses 15% of the cost of materials used by that company, as well as 15% of both the materials and labor for which Segall was required to pay its subcontractors. Excluded from the Computation would be only the labor performed by Segall. Additionally, Segall contends it is entitled to a profit of 10% of all labor and materials, plus 10% of the overhead charges.
On the other hand, Trahan contends plaintiff is entitled to only 15% of the cost of all materials that went into the job, whether placed there by Segall or one of the subcontractors, as overhead expenses, and 10% of all labor and materials as profit. This it is argued would be in accordance with the clear and unambiguous language of the contract. It is further urged that the terms "materials" and "labor" have fixed and certain meanings, and the contract should be enforced as written.
Segall first contends that the provision of the contract involved in this litigation is ambiguous; therefore, the parol evidence introduced was admissible to explain the true intentions of the parties. Article 1950 C.C. Second, under Article 1947 C.C., technical phrases are to be interpreted according to their received meaning with those who profess the art of profession to which they belong. Thus, the testimony of the architect as to the custom and usage of the terms in the addendum was erroneously disregarded. Finally, the demand for reformation should be granted since the evidence establishes mutual error or mistake.
In my opinion, there is no ambiguity in the provision of the contract stating "plus overhead expenses, at 15% of the cost of all materials, and profit at 10% of all labor and materials." The terms "materials" and "labor" have fixed and definite meanings. Computing overhead at "15% of the cost of all materials" could not be more explicit. There is nothing in the contract to indicate that "materials" should be interpreted to include "labor" whether performed by Segall or its subcontractors. Plaintiff's claim that overhead should include 15% on labor furnished by subcontractors, in my opinion, should be rejected. Additionally, the contract provides that profit be at "10% of all labor and materials." Nowhere *859 in the contract does it provide that the overhead charge be included in the computation of profit. Plaintiff's claim in this regard is not well founded.
In my view, the language of the provision in controversy is clear and unambiguous and should be enforced as written by the parties. Articles 1901 and 1945 C.C. The words "materials" and "labor" are not technical phrases requiring interpretation by those in the trade or occupation. Article 1947 C.C. Additionally, the method of computing "overhead" and "profit" is clearly set forth in the contract. Accordingly, the general rule that parol evidence is inadmissible to vary the terms of a written contract would be applicable. Article 2276 C.C. Having found no ambiguity in the provision in controversy, plaintiff's contention that Articles 1950, 1956 and 1957 C.C. would apply in the instant case is without merit.
In connection with plaintiff's demand for reformation based upon mutual error or mistake, it is an established rule of law in our jurisprudence that, in a suit between the parties to a contract, either party is permitted to correct any error in the instrument purporting to evidence the contract so as to make it express truly and correctly the intention of the parties. However, the error or mistake must be mutual and the burden is on the one seeking reformation to prove the mutual error or mistake by clear, and the strongest possible, proof. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940); Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806 (1956); and Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957). Furthermore, parol evidence would be admissible for this purpose. Agurs v. Holt, supra.
Thus, this case presents for determination mainly a question of fact. Under the accepted rules regarding reformation, plaintiff bears the burden of proof and the evidence of mutual error must be strong and convincing.
Segall contends the record establishes mutual error and, hence, reformation of the contract should be decreed. As evidence of this conclusion, it is asserted that Trahan's architect, Haas, and Ralph Segall testified substantially to the same facts which are alleged to be generally as follows: that the addendum was prepared by Haas; that the paragraph was a standard type in the area with a particular meaning within the trade and industry; that overhead computation was to include labor of subcontractors but not to include the labor of Segall; that both Segall and Trahan had discussed and understood the method of overhead computation prior to signing the contract; that Trahan was sent a number of statements from Segall on which overhead was computed in the manner stated, and no objection was made by Trahan; that profit was to be computed on labor, materials and the overhead charge; and both Trahan and Segall had discussed and understood this prior to signing the contract.
My appreciation of the record differs from that of the majority. The testimony of Haas in regard to Trahan's understanding as to the meaning of the addendum was extremely weak. He simply stated that he had discussed the matter with Trahan prior to its drafting, had forwarded it to him for his approval and signature and, as far as he knew, Trahan understood it.
Ralph Segall's testimony was to the effect that he had discussed the provision in controversy with Haas and that they had an understanding as to its meaning. Nowhere does his testimony indicate any direct communication with Trahan regarding his alleged understanding of the provision. Furthermore, an examination of the 23 invoices sent by Segall to Trahan does not provide plaintiff with much comfort. While each invoice does provide "Plus 15% o/head," there is no breakdown as to what is included. It is true that, if Trahan had applied the 15% to the total figure, he would have discovered that he was being charged overhead on the entire bill; however, *860 it would be unreasonable to conclude that his failure to complain under these circumstances would constitute any type of ratification or acquiescence on his part. In addition, there was no indication of profit on these invoices.
It should be observed that the only testimony indicating Trahan's knowledge of the alleged error or mistake was that of Haas. As previously indicated, his testimony is unimpressive. Additionally, it was brought out on cross-examination that Haas had had a disagreement with Trahan over his fee and had brought a lawsuit against Trahan in connection therewith. Accordingly, not much weight can be accorded his testimony under these circumstances.
The majority holds, as urged by plaintiff, that, since Segall and Haas were the only parties to testify, the rule of law to be applied herein is that evidence which stands uncontradicted must be accepted as true in the absence of a showing of falsity or unreliability. The application of this rule is predicated on the nonexistence of other evidence or proof in the record which contradicts or challenges the alleged uncontradicted testimony. Plaintiff likewise urges that the testimony of Haas, as Trahan's agent, must be accepted in the absence of contradition by his principal. This rule is also based upon the record being devoid of any contradictory evidence by the principal. However, my examination of the record reveals the existence of a letter dated November 24, 1969 (D-1) from J. C. Trahan through his general counsel to the then legal counsel for plaintiff, wherein defendant's position regarding the computation of overhead expenses and profit is clearly set forth. This letter was received in evidence by written stipulation of both parties (P-3). There can be no doubt that this letter constitutes evidence which clearly negates the testimony of Segall and Haas. Accordingly, in my opinion, the rule of uncontradicted evidence would not apply in the instant case. Furthermore, I do not subscribe to the view that Trahan's failure to testify would create a presumption against his position in view of the stipulated letter in evidence.
It is my conclusion that plaintiff has failed to meet the burden by clear and convincing proof that there was mutual error or mistake justifying reformation of the contract. The facts in this case reveal that the error or mistake, if any, was unilateral, but, in no event, could it be presumed that Trahan was apprised of it.
For these reasons, I respectfully dissent.