483 So.2d 205 (1986)
C.D. McCANN, et al., Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 84-997.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Writ Denied April 11, 1986.
*206 Fuhrer, Flournoy and Hunter, George A. Flournoy, Alexandria, for plaintiffs-appellants.
Gist, Methvin, Hughes and Munsterman, Dewitt T. Methvin, Jr., Alexandria, for defendants-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
C.D. McCann, Hazel McCann, Shirley McCann, and Doris Perser sued George Perser and his auto insurer, State Farm Mutual Automobile Insurance Company, for personal injuries and property damage allegedly sustained in a single vehicle accident. A peremptory exception of no right of action was filed on behalf of George Perser as to the claim of Doris Perser, his wife.[1] Defendants then answered the plaintiffs' petition and filed a third party demand against C.D. McCann and Hazel McCann and their home insurer, Bankers Standard Insurance Company, alleging that the McCanns were the owners of the trailer being towed by the Perser van, and that the accident occurred as a result of a defect in the trailer.
Bankers Standard Insurance Company filed a motion for summary judgment alleging that its policy did not afford coverage to the McCanns. Summary judgment was granted dismissing Bankers from the third party demand. This judgment is now final.
The trial court absolved Perser and State Farm from all liability on the main demand and rejected the third party plaintiffs' demand. Plaintiffs took this devolutive appeal. Defendants filed an answer to the appeal requesting affirmance of the judgment, or, in the alternative, the reversal of the trial court judgment dismissing their third party demand.

FACTS
During the summer of 1982, the McCanns and the Persers, long-time friends, agreed to take a camping vacation together. The Persers supplied the van which pulled the McCanns' 24 foot Kit travel trailer.
While traveling towards Amarillo, Texas, it was noticed that with a fully loaded van and trailer there was a tendency for the vehicle combination to sway while traveling over 45 mph. Because of this, the group stopped in Amarillo, Texas, to have a special sway bar attached. Once the sway bar was attached, the vehicle combination did not sway again until the time of the accident.
Mr. Perser and Mr. McCann alternated driving responsibilities throughout the vacation. The McCanns' two girls, Shirley and Lisa, usually sat in the two middle seats of the van while the wives, Doris Perser and Hazel McCann, were normally found in the back seat. On the day of the accident, the group left the scenic area of Yellowstone National Park at approximately 7:30 a.m. Their goal for that day was some 450 miles away in the State of Idaho. The traffic in the mountains going out of *207 the park was slow. According to Mr. McCann, Mr. Perser became irritated with the traffic and rode on someone's bumper for 10 or 15 miles. This irritation apparently subsided once they reached less congested traffic outside the park. Once outside the park, Mr. Perser continued to drive while the others, except for his wife, went back to sleep.
The vacationers had just passed through Bozeman, Montana, some 80-90 miles beyond their starting point, when the accident occurred. The time was approximately 9:30 or 10:00 a.m., some two to two and one-half hours after they had left Yellowstone. At the place of the accident, the road was straight and level, the speed limit was 55 mph, and the road was 30 feet wide. Tire marks on the highway start 261 feet away from the point where the van and trailer left the road. Tire marks and other physical evidence reflect that the vehicles traveled another 89 feet after leaving the road before coming to rest upside down.
According to the record, the van and trailer suddenly started to sway back and forth, something it had not done since Amarillo. When this occurred, presumably Mr. Perser lost control as the vehicles swerved onto the shoulder, then across the center line, and then finally ran off the right side of the road.
Trooper Stephen Barry of the Montana State Police investigated the accident. While not an expert in accident reconstruction, he did have training in accident investigation and had been investigating traffic accidents for 10 years. He only spoke to Mr. Perser about the accident. Perser told him that he was only traveling 50 mph when the vehicle started to sway. The trooper could find no evidence at the scene to contradict Perser's statement. The trooper also indicated that the road was dry and free of any defects, and that he could not find any defects in the trailer. He opined that human error was involved, but he was not certain about his conclusion.
Mr. McCann awoke just before the vehicles went completely out of control. He testified that he heard Mrs. Perser yell at her husband to "slow down" after the swaying began. He saw Mr. Perser apply the manual handbrake which was designed to brake the trailer wheels. This caused the van and trailer to slow down and come back into a straight line with one another. By this time, the vehicles were angled toward the right side of the road. Mr. Perser then let go of the handbrake and, according to Mr. McCann, stepped on the accelerator. Moments later the vehicles were resting on their tops off of the road. Mr. McCann said he was not worried about Perser's driving. He had easily fallen asleep 25-30 minutes before the swaying began. McCann did not know how fast Perser was going when the swaying began but estimated their speed to be 35-40 mph when they left the road.
All the other witnesses agreed that Perser had been driving in a normal fashion that day, and that the van and trailer had not given any indication of swaying since Amarillo. None of the witnesses could shed any light on why the vehicles started to sway once more. Only the driver, Mr. Perser, was in a position to possibly explain the swaying motion. All of the other witnesses, except Perser's wife, were asleep when the swaying began. Perser's wife was seated in the rear of the van so she could not observe his speed, nor whatever behaviors he might have been exhibiting at the time the swaying motion began. At the trial, Mr. Perser was not called by the plaintiffs, under cross-examination, or by defendants to shed any light on the circumstances preceding the swaying of the vehicles or the cause thereof. Hence, we are faced with scant evidence in trying to determine whether or not Perser was at fault.
As a result of the accident, the plaintiffs sustained varying degrees and types of personal injuries. The McCanns' travel trailer and all of its contents were allegedly destroyed.
The parties have presented the following issues on appeal:
1. Should the trial judge have found the defendants liable after all the evidence *208 was presented through use of the evidentiary doctrine of res ipsa loquitur?
2. Is there a presumption that when a defendant fails to testify in a civil case that his testimony would have been adverse to his position?
3. Is the sudden emergency doctrine an affirmative defense that must be specifically pleaded?
4. Did defendants prove by a preponderance of the evidence that a sudden emergency actually existed?
5. Is there a presumption that when a defendant fails to testify in a civil case that his testimony would have been adverse to his position?

RES IPSA LOQUITUR
In Louisiana, the landmark case of Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957) has been used in numerous cases in determining whether the doctrine can be applied to a particular set of facts. In Larkin, the court stated:
"A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is "that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty."
Many instances are noted where the doctrine, though invoked, has no application; e.g., it is obvious that when there is, in addition to evidence disclosing the physical cause of the accident, either direct or circumstantial evidence which conclusively repels any inference of negligence that might otherwise arise, the plaintiff is deprived of any practical advantage from the rule. Nor is a resort to res ipsa loquitur warranted in cases where the existence of negligence is an immaterial issue,
... or where the opposing parties or their witnesses are present and direct testimony as to the cause of the accident is available; ..." (Emphasis ours).

Further, in Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804 (1943), it was stated that:
"... the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such..."
If there is no direct evidence that adequately explains the event, then the circumstantial evidence must exclude other reasonable *209 hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); King v. King, 253 La. 270, 217 So.2d 395 (1968).

NEGLIGENCE OF DEFENDANT
The instant case has many characteristics that are applicable to the evidentiary theory of res ipsa loquitur: the defendant, Perser, had exclusive control of the vehicles; he had superior knowledge of the cause of the accident; he had a duty to use due care; direct evidence of negligence is absent; and, plaintiffs did not contribute to the accident. Larkin, supra; W. Prosser, Law of Torts: Res Ipsa Loquitur 211-235 (4th ed. 12th printing 1971).
However, the doctrine does not modify the general rule that negligence will not be presumed. The plaintiff still has the burden of proving by a preponderance of the evidence, either direct or circumstantial, that the defendant was negligent. In the instant case, the plaintiffs have not carried their burden of proof because they have not adequately excluded other reasonable hypotheses with a fair amount of certainty. Naquin, supra; King, supra.
The record reflects that the accident in this case was the result of a violent swaying of the vehicles which began while defendant was driving, which circumstance caused Perser's loss of control of the vehicles. Reasonable hypotheses for the cause of the swaying could have been defendant's speed or otherwise negligent handling of the vehicles; a defect in the road, such as a pot hole or an oil patch; inclement weather conditions; or, a defect in the trailer or the recently installed sway bar.
The testimony of the state trooper and the testimony of the plaintiffs adequately excluded the hypotheses that the road was defective or that weather conditions caused the swaying. The plaintiffs testified that it was merely misting when the swaying began. The trooper testified that the road was not defective, and that it did not start to rain hard until one-half hour after he arrived at the scene. Also, there is no evidence supporting a finding that Perser was driving the vehicles at an excessive rate of speed under prevailing conditions. The only remaining hypotheses are that some maneuver on the part of Perser, inadvertent or otherwise, initiated the swaying of the vehicles or that the swaying was caused by a defect in the trailer or sway bar.
In our view, plaintiffs did not, on the trial of the case, exclude with a reasonable amount of certainty the hypothesis that the trailer was defective or that the recently installed sway bar suddenly showed a defect. The plaintiffs failed to produce an expert in accident reconstruction, who could have shed light on the cause of the swaying, or even a witness who professed to have some knowledge about trailers and/or sway bars. The state trooper, who did have ten years of experience in reporting accidents, was not an expert in accident reconstruction. Any opinion expressed by him on this subject is entitled to little weight. Additionally, it was apparent from the trooper's deposition that, following the accident, he made a very cursory inspection of the trailer.
With regard to this hypothesis, the only evidence in the record reflects that the trailer had a tendency to sway; following installation of a sway bar in Amarillo, Texas, the swaying motion subsided; and, suddenly, without explanation in the record, the swaying motion began anew causing the operator to lose control of the vehicles.
All of the plaintiffs who testified at the trial indicated that Perser was driving in a normal fashion that day. Most all of them had even been comfortable enough to fall asleep in the van soon after leaving Yellowstone. Then, suddenly, for no apparent reason, the swaying motion began. Admittedly Perser's wife did yell at him to slow down, but this could have been in reaction *210 to the swaying motion itself instead of in reaction to the speed at which he was traveling. Additionally, Perser told the state trooper that he had only been traveling 50 mph, the trooper could find no evidence to the contrary. With all of this in mind, it seems equally plausible that the swaying motion began due to some defect in the trailer and not from any negligent conduct on the part of defendant.
Finally, we consider res ipsa inapplicable to the circumstances of this case for the further reason that direct testimony bearing upon the cause of the accident was readily available to plaintiffs. The most knowledgeable witness of the facts surrounding this accident, did not testify. Plaintiffs had the right and the opportunity to call Perser under cross-examination. La.C.C.P. Art. 1634. Their failure to do so cannot, in our view, serve to permit their invocation of the doctrine of res ipsa loquitor or otherwise escape the burden placed upon them of establishing defendant's negligent conduct as the cause of their injuries.
In this connection, appellants urge that when a defendant in a civil case can, by his own testimony, throw light upon matters at issue, necessary to his defense and, peculiarly within his own knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist. Plaintiffs cite Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968) as support for their contention. We find appellant's reliance on Ruthardt misplaced.
The presumption in Ruthardt, supra, is used when the plaintiff has already proved a prima facie case of negligence. In Ruthardt, there was already sufficient evidence to find the defendant negligent. The fact that the defendant did not testify merely added weight to the court's finding, it did not create the negligence finding in itself or allow plaintiffs to exclude a competing hypothesis of causation to invoke the doctrine of res ipsa loquitur. The plaintiffs have the burden of sufficiently excluding all other reasonable hypotheses before the court can, after all the evidence is in, apply res ipsa loquitur. The presumption raised in Ruthardt, supra, and later cases, does not relieve the plaintiffs of this burden.
Taken individually, or as a whole, the foregoing facts and testimony still leave us with the reasonable hypothesis that a defect in the trailer, which had been evident before Amarillo, Texas, or a defect in the sway bar caused this particular accident. Since the plaintiffs have not provided enough evidence to adequately exclude all reasonable hypotheses other than the negligence of the defendant, and since direct testimony bearing upon the cause of the accident was readily available, plaintiffs cannot avail themselves of the doctrine of res ipsa loquitur.
Finally, we find no clear error in the trial court's conclusion that plaintiffs failed to establish, by a reasonable preponderance of the evidence, that George Perser was guilty of negligent conduct which was a proximate cause of the injuries which they sustained.

SUDDEN EMERGENCY DOCTRINE
Appellants next urge error in the trial court's failure to find the defendant, George Perser, negligent on the basis of his driving conduct following the swaying of the vehicles, as testified to by C.D. McCann, and the trial court's excusal of such conduct on the basis of the sudden emergency doctrine.
Additionally, appellants contend that the trial judge should not have applied the sudden emergency doctrine because it is an affirmative defense that must be specifically pleaded.
Admittedly there is a split between the circuits as to whether the sudden emergency doctrine is an affirmative defense. This circuit, in the early opinion of Fontana v. State Farm Mutual Automobile Ins. Co., 173 So.2d 284 (La.App.3d Cir.1965), writ refused, 247 La. 1027, 175 So.2d 644, held that the sudden emergency doctrine is an affirmative defense, which must be pleaded *211 by the party relying upon it. Other circuits have held the opposite, or said that the holding in Fontana was pure dicta. See Bautista v. Maryland Casualty Company, 201 So.2d 122 (La.App. 4th Cir.1967); McMullan v. Allstate Insurance Co., 242 So.2d 921 (La.App. 1st Cir.1970), writ refused, 257 La. 990, 244 So.2d 859 (1971).
After reviewing the reasoning of the various circuits on this issue, we respectfully decline to follow the opinion of this circuit in Fontana.[2] We now hold that the sudden emergency doctrine is not an affirmative defense which must be specifically pleaded in the defendant's answer. Therefore, it was proper for the defendant to raise the sudden emergency defense in his post-trial brief.
We must next decide whether the trial court came to the correct decision after applying the doctrine. It is not a foregone conclusion, as appellant suggests, that the defendant will be exculpated if the doctrine is applied.
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, as long as he has acted in a reasonably prudent manner once confronted, and, unless the emergency was brought about by his own negligence. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Copeland v. La. Dept. of Transp. & Develop., 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 448 (La.1983); Bialy v. State, Etc., 414 So.2d 1273 (La.App. 3rd Cir.1982), writ denied, 417 So.2d 367 (La.1982); Fontana v. State Farm Mutual Automobile Ins. Co., supra.
The cause of the swaying still remains a mystery after having reviewed the entire record. We do know from the record, and the trial court correctly found, that the vacationers had not experienced any swaying motion since installing the sway bar. We also know that Mr. Perser had been safely driving for some two or two and one-half hours that morning before the swaying began. Lastly, we know that for some unexplained reason, the vehicles quite suddenly started to sway back and forth with such vigor that the vehicles began swerving on the highway. From these facts, we agree with the trial court that Perser found himself confronted with a sudden emergency.
Plaintiffs can still defeat defendants' use of the doctrine by showing that the defendant created the emergency through his own negligence, or that once confronted with the emergency he did not react as a reasonably prudent person would react. The plaintiffs in this case, not the defendants, bear these burdens of proof. We agree with the trial court that plaintiffs have failed to carry their burden of proof in both of these areas.
Plaintiffs failed to produce evidence that defendant's negligence contributed to the creation of the sudden emergency. Quite to the contrary, the evidence shows that Perser was driving in a normal fashion at approximately 50 mph in a 55 mph zone. The evidence also shows that the road was dry, straight, level and free of defects, and that the weather conditions were not so inclement as to cause one to slow down to an even lower speed. Lastly, there had been no evidence of swaying since Amarillo, Texas. With these facts before it, the trial court reasonably concluded that Perser had not negligently contributed to the emergency by driving 50 mph. We can find no manifest error with this conclusion.
Once confronted with the emergency, that was not of his own making, Perser *212 still had a duty to react reasonably within the emergency situation itself. The evidence in the record shows that Perser applied the manual hand brake which controlled the brakes on the trailer once the swaying began. This action caused the vehicles to stop swaying, slow down, and become realigned with one another. After the vehicles became realigned, Perser, according to only Mr. McCann, stepped on the accelerator pedal. We agree with the trial court that all of these actions were reasonable under the circumstances.
It seems quite reasonable for a person to apply braking power to stop the swaying motion of a van and trailer. Once the swaying stops and the vehicles became realigned, it seems reasonable for a person to apply some pressure to the accelerator to keep the vehicles under control. Both actions, the braking of the rear vehicle and the later acceleration of the pulling vehicle, naturally have the effect of stopping or at least reducing any swaying motion. Perser's reactions, according to the record, completely stopped the violent swaying that they had been experiencing. Although Perser's actions may not have been the best actions possible upon reflection, we feel that his behavior was reasonably prudent given the circumstances.
Therefore, we hold, as did the trial court, that the defendant found himself confronted with a sudden emergency, did not contribute to the creation of the emergency, and acted as a reasonably prudent person within the emergency situation. We affirm the trial court's finding on the main demand that George Perser was not shown to be guilty of any negligence.

THIRD PARTY DEMAND
Considering our resolution of the main demand, the issue presented by defendant's third party demand and their answer to this appeal is moot.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellants are to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] There is no indication in the record that the trial court ever issued a ruling on this exception. On our own motion however, we sustain the exception and dismiss the demands of Doris Perser against her husband, George Perser. La. R.S. 9:291; Cloud v. State Farm Mutual Auto Insurance Co., 440 So.2d 961 (La.App. 3rd Cir. 1983), writ denied, 445 So.2d 442 (La.1984).
[2] Judge Tate, the author of the Fontana decision, in an article he later wrote in 29 La.L.R. 269-299 at 285 confessed error and said, "The Fourth Circuit was on firm ground when it correctly held, in opposition to the holding of another circuit, that sudden emergency is not an affirmative defense which the defendant is required to plead in his answer." See also n. 79 on that same page.