PLOTKIN, Judge.
Plaintiffs, Paula and Mark Levens, appeal a trial court judgment dismissing their personal injury suit against defendants, Trinity Materials, Inc., Commercial Union Insurance Co. and Empire Fire and Marine Insurance Co. We affirm.
Mark Levens was seriously injured June 3, 1984 when he was struck by an 18-wheeler tractor/trailer owned by Trinity Materials, Inc. and driven by its employee/agent, Richard Myers.
The accident occurred on a Sunday morning at approximately 7 a.m. on Interstate 10, beside the Michoud Boulevard entrance ramp in New Orleans East. Levens, who had a blood alcohol level of .159, had stopped his car on the right shoulder of the interstate; the left front tire was flat. Myers’ truck was traveling in the right lane of the three-lane interstate. A lane for traffic entering the interstate from Mi-choud Boulevard separated the shoulder where Levens’ truck was parked and the right lane, where the impact occurred.
Levens, who suffered severe permanent mental and personality disorders as a result of the accident, testified at trial that he was unable to remember any of the events just prior to the accident.
Myers failed to testify at trial, but his deposition testimony was admitted into evidence. He described the accident as follows:
A. I’m in the right lane.
Q. What happened next?
A. After I pushed up to Michoud Boulevard, okay, the truck was on the shoulder.
Q. You saw a truck on the shoulder?
A. On the shoulder of the road. The guy was standing in front of the truck.
[[Image here]]
A. Standing by the truck, kind of kneeling down, and he was not leaning all the way over, kind of leaning down.
[[Image here]]
*873 Q. When you saw him, then, what did you do?
A. Well, I proceeded on.
Q. All right.
A. And I just, as I was approaching him—
Q. Approaching him?
A. Right, getting close to him. He stepped, like he was going to step out in front of my truck.
Q. All right.
A. I caught it right then and applied my brakes.
Q. Wait. Stop right there for a moment, please. How far were you away from him then, if you know?
A. Well, I can’t remember exactly how far.
Q. That is all right. What did you do then?
A. Okay. After I applied the brakes, then I released. He jumped back and I released the brake. I continued on.
Q. When you applied your brakes did your vehicle — What did your vehicle do, if anything?
A. I make skid marks because I applied my brakes pretty hard.
Q. Then what happened? What did you do?
A. Once he jumped back, I assume [sic] that, you know, he had seen what happened, and I caught onto him that he was not going to jump. So after I proceeded on, all of a sudden he ran across the street. I tried to slide as far as I can off of him, but I could not get over into the other lane.
Myers’ deposition, pages 26-29.
The plaintiffs presented the testimony of James Stillinger, a disinterested witness to the accident. He was traveling in the left lane of the interstate alongside Myers’ truck at the time. Another automobile was in the center lane, between Stillinger’s car and Myers’ truck, so Stillinger was unable to observe the impact. He testified that he saw the truck tires smoke and then saw a body rolling out the right side of the vehicle. He confirmed Myers’ assertion that he was unable to move the truck into the center lane because of the presence of the other car. He also stated that his best estimate of the speed of Myers’ truck was 55 mph.
Finding that Myers’ deposition was not contradicted by any other evidence, the trial judge held that the plaintiffs failed to produce any “proof of negligence or fault which was a cause of the accident or of Mr. Levens’ injuries.” Because the plaintiffs failed to carry their burden of proof, their claim was dismissed.
The plaintiffs challenge the trial judge’s ruling on the basis of a number of proposed legal inferences based on their interpretation of the evidence presented at trial. Most importantly, they urge this court to find that Myers essentially admitted his fault by leaving the scene of the accident and by failing to testify at trial. We decline to do so.

Leaving the Scene of the Accident

Stillinger testified that Myers failed to stop his truck until four-tenths of a mile past the point of impact. He stated that he followed the truck that distance and that Myers stopped only after he had seen Stil-linger trying to get his license plate number. Stillinger stated that he followed the truck, rather than staying at the scene to render aid to the victim, because he was afraid Myers was not going to stop. After the truck stopped, Stillinger stayed with the truck until the police arrived to escort the truck back to the scene of the accident. The trial judge made a specific factual finding that Myers “did not stop voluntarily after the impact.”
Citing cases from Louisiana and other states, the plaintiffs argue that this factual finding gives rise to an inference that the driver of the vehicle was at fault in causing the accident.
It has long been a rule in Louisiana that evidence that a driver fled the scene of an accident, knowing that he struck a pedestrian, may be considered as evidence of fault. In Vuillemot v. August J. Claverie & Co., 12 La.App. 236, 125 So. 168 (La.App.Orl.Cir.1929), the court stated:
Then, too, since the accident was caused by a truck and since no truck *874 stopped, either the driver of the truck which caused it was not keeping a proper lookout, or he drove away in an effort to avoid being caught. If he had been keeping a proper lookout, surely he would have noticed that the truck struck the young lady with its front fender. If he was not keeping a proper lookout, he was negligent. If he did know that he struck the young lady and did not stop, then his action in attempting to escape was tantamount to an admission of guilt. We have therefore come to the conclusion that, although the evidence as to the facts of the accident is very meager, there is sufficient in the record to warrant the finding that the young lady was killed by a truck and that the driver of the truck was at fault.
125 So.2d at 169-70, accord Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764 (La. App.Orl.Cir.1930).
Both the Louisiana cases and the out-of-state cases cited by plaintiff are factually distinguishable from the case at hand. In the instant case, Myers did stop. The record leaves no doubt concerning this fact. Although the rule stated above — that leaving the scene of an accident may be considered as evidence of fault — is still valid in this state, that rule cannot be imposed in the instant case because the driver did not flee the scene.
Despite the statement by the trial judge, this court finds that the record contains insufficient evidence that Myers failed to stop voluntarily. Myers’ deposition testimony and the testimony of the plaintiffs’ own expert indicates that Myers did not drive his truck an unreasonable distance before stopping and that he was therefore not guilty of a “hit and run.”
Myers testified as follows:
A. Well, it was upsetting and all that I hit him. I got upset and everything. I got on over, pulled over to the shoulder lane and made a stop.
Q. So after you struck him you gradually went over to the shoulder of the road, you immediately stopped?
A. Right.
[[Image here]]
Q. You brought your vehicle to a stop as quickly as you could?
A. As quickly as I could.
[[Image here]]
Q. After you struck him you have no way of knowing how many feet it took to bring your truck to a stop, is that correct?
A. No, sir, because I didn’t come to a sudden stop because I was all upset. I realized that I had hit him, and I was upset. I took my time bringing it down and got to the shoulder.
Q. Are you finished?
A. Yes.
Q. You did bring your vehicle to a stop after you gained your composure within a short distance after striking him?
A. Right.
Q. What did you do then? After that, what did you do?
A. Well, I got out of the truck. When I got out of the truck, a man that was behind me when I got out of the truck, he was there and he asked me did I realize I hit the man back there. I said, “Yes, I realize. That is the reason I stopped.”
Myers’ deposition, pages 36-38.
The testimony of Raymond C. Burkart, the plaintiffs’ accident reconstruction expert, corroborated Myers' assertion. On cross examination, Burkart made the following statement:
A. No, because the driver wasn’t much further than he had to be. He brought his vehicle to a gradual stop.
Trial transcript, Vol. I, page 153.
Based on our review of the trial transcript, we find that the trial judge was clearly erroneous in his finding that Myers failed to stop voluntarily after the accident. All of the plaintiffs’ arguments which depend upon that factual finding are therefore moot.
In a related argument, plaintiffs argue that Myers should have been held liable for his failure to stop and render aid to Levens following the accident. They cite the Restatement of Torts (2d), Sec. 322, p. *875 133, which deals with the “Duty to Aid Another Harmed by Actor’s Conduct,” as well as a number of out-of-state cases.
A study of the authorities and caselaw cited by plaintiffs reveals that liability attaches for failure to render aid to another harmed by one’s conduct only upon proof that the failure resulted in additional harm to the injured party. In the instant case, the plaintiffs failed to present evidence that the breach of the duty to render aid caused any additional harm to Levens. Therefore, the defendants are exposed to no liability on the basis of this principle. Failure to Testify
Plaintiffs argue strenuously that Myers’ failure to testify at trial is tantamount to an admission of liability. They cite Bastrop State Bank v. Levy, 106 La. 586, 31 So. 164 (La.1901) and Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (La.1968), which state as follows:
[W]hen a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist.
Ruthardt, supra, 215 So.2d at 810, citing Bastrop State Bank, supra, 31 So. at 166.
However, in the instant case, Myers was not a named defendant. Additionally, at the time the trial occurred, Myers no longer worked for Trinity Materials. Robert Bailey, president of Trinity, testified as follows regarding this issue:
Q. Give me your name?
A. My name is Robert Norman Bailey.
Q. Do you have a son named Robert Bailey?
A. Yes.
Q. Did you send him to New Orleans for the deposition of Richard Meyers [sic] and his was taken to [sic]?
A. Yes.
Q. You had an opportunity to read Mr. Meyers [sic] deposition, have you not?
A. No, sir.
Q. You’ve never seen it?
A. No.
Q. Is he still employed by you?
A. No.
Q. When was the last time you heard from him?
A. Oh, I would guess probably about six or eight months, sir.
Q. Do you know where he lives?
A. We have his address. He lives in Richton, Mississippi.
Q. Mr. Rodrigue advised you, served a subpoena, on May 4, 1987 to produce Mr. Meyers [sic] in court for the trial? A. No.
Q. Did anyone ever tell you I wanted Mr. Meyer [sic] to testify as a witness in this case?
A. No.
Trial transcript, Vol. I, pages 186-87.
Bailey did admit later that he had been asked to get in touch with Myers, but that he had been unable to do so. However, this fact is not sufficient to raise the presumption that Myers’ failure to testify should be considered an admission of fault. Since Myers was not a named defendant himself, and since he no longer worked for the named defendant and was not within the control of the named defendant, the presumption does not arise.
Plaintiffs also cite Lowenburg v. Labor Pool of America, Inc., 296 So.2d 846 (La. App. 4th Cir.1974), a case factually similar to the instant case. In Lowenburg, this court held as follows:
The failure of a party to call a witness creates a presumption that the witness’ testimony would have been unfavorable to that party where the party has the burden of proof or the party has some control over, or a close relationship with the witness.
Lowenburg can be distinguished from the instant case by two facts: First, the driver in Lowenburg failed to appear even for deposition testimony. In the instant case, the court was able to consider Myers’ version of the accident because he testified by deposition. Second, since Myers was no longer employed by Trinity Materials, Trinity had no control over or special relation *876 ship with, Myers. Myers’ failure to testify is therefore insufficient to expose the defendants in the instant case to liability.

Violation of Standards of the Industry

Plaintiffs further argue that the defendants should be held liable in this case because Myers violated standard practices of the trucking industry by driving without sleeping for more than 24 hours. In brief, plaintiffs attempt to outline Myers’ activities on the day before the accident and on the day of the accident. They assert: “It should be noted that the truck driver Myers left Mississippi Saturday morning at 10 a.m. and that the incident involving Mark Levens occurred the following Sunday morning about 7 a.m.” The plaintiffs claim these facts establish a violation of Sections 392.3 and 395.3 of the Motor Carrier Regulations prohibiting drivers whose ability and alertness is “so impaired through fatigue, illness or any other cause as to make it unsafe for him to begin or continue to operate the motor vehicle” from operating such vehicles.
However, despite these assertions, the plaintiffs’ assertion that Myers had not slept in more than 24 hours when the accident occurred is based solely on these presumptions and is not supported by the record. In fact, there is evidence to the contrary. Myers stated in his deposition that he took an eight-hour break in Morgan City on Saturday night. Therefore, violation of the regulation was not established.
Plaintiffs also allege that liability should arise from the fact that Myers apparently failed to blow his horn prior to the accident. However, since this court has concluded that the truck driver was not negligent in causing the accident, and essentially that the accident was unavoidable, failure to blow the horn does not give rise to any liability on the part of any of the defendants.

Sufficiency and Preponderance of the Deposition Testimony

Plaintiffs argue strenuously, without citing any authority, that the standard of review of deposition testimony is not manifest error” as set out in Canter v. Koehring Co., 283 So.2d 716 (La.1973). They claim that the appellate court should consider the sufficiency and preponderance of the testimony. They argue the improbability of the accident occurring as Myers testified, saying Myers’ deposition is full of “inconsistencies, half-truths and outright mis-statements.” However, this court has reviewed the deposition and agrees with the trial judge that “Meyers [sic] deposition testimony was not contradicted by any other evidence.” Additionally, the recent Louisiana Supreme Court case, Virgil v. American Guarantee & Liability Ins., Co., 507 So.2d 825 (La.1987), stated that the manifest error rule applies even when the evidence before the trier of fact consists solely of written reports, records and depositions. Id. at 826.
Finally, again without providing any authority for the proposition, the plaintiffs delineate the following two-part test for appellate review of facts:
A. The appellate court must find from the record that their [sic] is a reasonable factual bases [sic] for the finding of the trial court, and
B. The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Plaintiffs argue that the trial court’s finding that “no fault on the part of Myers was a cause of the accident and injury to Mr. Levens” was manifestly erroneous. However, following extensive review of the testimony and the exhibits, we conclude that the trial court’s finding was correct. Therefore, applying the two-part test provided by the appellants, we conclude (1) that there was a reasonable basis for the finding of the trial court and (2) that the record establishes that the finding is not clearly wrong.
AFFIRMED.