GUIDRY, J.
lain this case arising out of a multi-vehicle accident, plaintiffs, Scott Lowe and Beth Lowe, appeal from a judgment of the trial court granting summary judgment in favor of defendants, Max Trans, LLC (Max Trans) and Tommy Lee Marshall. For the reasons that follow, we affirm the trial' court’s judgment.
FACTS AND PROCEDURAL HISTORY
On December 29, 2011, Scott Lowe was a guest passenger in a vehicle driven by David Porter (Porter vehicle), traveling westbound on Interstate 10 in New Orleans, Louisiana. At approximately 4:00 a.m., the Porter vehicle encountered a dense' cloud made up of a mixture of fog and smoke. Although Porter began braking, he nonetheless rear-ended the vehicle in front of him owned by Max Trans and operated by Marshall (Marshall truck), which was obstructing one or more lanes of travel. The Marshall truck apparently had also encountered the cloud of smoke and fog and had rear-ended a vehicle owned by Clayton Harper and operated by Tony Crawley, which was also obstructing one or more lanes of the interstate. Immediately after the collision between the Porter vehicle and the Marshall vehicle, the Porter vehicle was struck from the side and/or from behind by two vehicles— one vehicle owned by Noble and operated by Roy E. Poole and another vehicle owned and operated by James Pitts. Finally, in an effort to avoid colliding with other vehicles, a vehicle owned by Saia Motor Freight Line, LLC and operated by Ernest Wilkes (Saia vehicle), caused the Noble truck to collide into the vehicle owned by James Pitts, further causing both vehicles to collide with the Porter vehicle.
On December 20, 2012, Lowe and his wife, Beth Lowe, filed a petition for damages against multiple defendants asserting that the second collision caused by the Saia vehicle caused the Porter vehicle to go underneath the Marshall vehicle, resulting in severe injuries to Lowe, Particularly as to defendants Max Trans and LMarshall, plaintiffs asserted Marshall was employed by Max Trans and was working within the scope of his employment when the second collision was caused, in whole or in part, by the negligence of Marshall in: failing to keep a proper look out; entering a dense cloud of smoke and fog that reduced .visibility; entering a dense could of smoke' and fog at a speed too high to avoid a collision; failing to yield, the right of way; failing to see what he should have seen, and if he did see, failing to react in a reasonable and prudent manner to avoid a collision; following a vehicle too closely in violation of La. R.S. 32:81; and obstructing the lane of travel when it was unsafe and unreasonable to do so, in violation of La. R.S. 32:64 and 141.
Thereafter, on May 5, 2014, Max Trans and Marshall filed a motion for summary judgment, asserting that undisputed material facts establish that' the vehicle in which Lowe was a passenger hit the vehicle driven by Marshall from the rear, and plaintiffs presented no evidence to support a finding that the collision was caused by Marshall’s negligence or to rebut the presumption of liability imposed upon the driver of the rear-ending Porter vehicle. Following a hearing, the trial court denied *764 Max Trans and Marshall’s motion for summary judgment as premature.
Following the taking of depositions of several other drivers involved in the accident at issue, Max Trans and Marshall re-urged their motion for summary judgment on July 14, 2015, asserting that the scope of any duty owed by a leading driver to a following driver does not encompass the risk of harm of both drivers encountering zero visibility conditions and a stopped vehicle obstructing the leading vehicle’s lane of travel. Further, Max Trans and Marshall asserted that the scope of any duty owed by a leading motorist to avoid striking a forward vehicle stopped in its lane of travel does not encompass the risk of harm that a following vehicle will strike the rear of the leading vehicle when both drivers experience zero ^visibility conditions. Max Trans and Marshall contended that the zero visibility presented a sudden emergency, precluding any finding of fault as to Marshall. In support of then motion, Max Trans and Marshall submitted the deposition testimony of Marshall, as well as five other drivers involved in the subject accident.
In opposing Max Trans and Marshall’s motion for summary judgment, plaintiffs asserted that a genuine issue of material fact existed as to what Marshall saw or should have seen on the morning of the accident and submitted photos of the accident as well as the deposition testimony of Marshall and Robert Arrington in conjunction with their opposition.[1]
At the hearing on the re-urged motion, plaintiffs referred to, for the first time, the deposition testimony of Crawley as support for their argument in opposition to Max Trans and Marshall’s motion for summary judgment. Counsel for Crawley, Max Trans, and Marshall objected to the reference and/or introduction of the Crawly deposition not only because the deposition was noticed in an entirely different case in which Crawley was a plaintiff, but also because plaintiffs had not referenced or otherwise relied upon the deposition in their opposition filed with the court. The trial court ruled that because Crawley was not deposed in the instant case and the deposition was not filed into the instant suit record as part of plaintiffs’ opposition to the re-urged motion for summary judgment, it was not admissible. However, plaintiffs were permitted to proffer the Crawley deposition.
At the conclusion of the hearing, the trial court found that it was undisputed that during the relevant time period, there were periods where, due to the combination of smoke and fog, there were zero visibility conditions created on I- RIO- The trial court further found that the strange, or at least unusual, occurrence of weather and possibly smoke arose to the level of being an act of God in its condition. As such, the trial court found, given the deposition testimony of Marshall and other drivers, that: Marshall unexpectedly encountered almost immediate zero visibility, there was a vehicle in front of him, and while he may have had the option to swerve, even if he saw the vehicle in time to do so, swerving into lanes where the driver has zero visibility was not reasonable. Accordingly, the trial court granted summary judgment in favor of Max Trans and Marshall and dismissed plaintiffs’ claims against them with prejudice.
Plaintiffs now appeal from the trial court’s judgment.
*765 STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).[2] Only evidence admitted for purposes of the motion for summary judgment shall be considered by the court in its ruling on the motion. La. C.C.P. art. 966(F)(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment inappropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1 Cir. 12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La. 6/15/07), 958 So.2d 1199.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Charlet v. Legislature of the State of Louisiana, 97-0212, p. 7 (La.App. 1 Cir. 6/29/98), 713 So.2d 1199, 1203, writs denied, 98-2023, 98-2026 (La. 11/13/98), 730 So.2d 934.
DISCUSSION
In the instant case, Max Trans and Marshall sought summary judgment on the ground that the scope of whatever duty a forward motorist owes to a following motorist does not encompass the risk of the bizarre set of circumstances presented | sby sudden and unforeseeable zero visibility conditions. More particularly, Max Trans and Marshall asserted that the zero visibility conditions presented a sudden emergency, precluding any finding of fault as to Marshall.
*766 Under the sudden emergency-doctrine, one who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 389 (1972). The doctrine of unavoidable or inevitable accident relieves a person of liability so.long as the person invoking the doctrine shows that he was in no way to blame for the happening. If the motorist has exercised ordinary care as required by law (or the highest degree of care as may be required) and has nevertheless inflicted injury on another, the accident is said to be inevitable, for which no liability attaches. Richardson v. Aldridge, 37, 192, p. 9 (La. App. 2nd Cir. 5/16/03), 854 So.2d 923, 931, writ denied, 03-3034 (La. 2/6/04), 865 So.2d 743. Where no facts are in dispute, summary judgment may be appropriate where a sudden emergency renders an accident unavoidable. Carias v. Loren, 14-0655, p. 5 (La.App. 1 Cir. 3/9/15) 2015 WL 1019481 (unpublished opinion), writ denied, 15-0879 (La. 8/28/15), 176 So.3d 402; Loyd v. Lancer Insurance Company, 43,859, p. 4 (La. App. 2nd Cir. 1/14/09), 999 So.2d 1232, 1234.
In support of their motion for summary judgment, Max Trans and Marshall submitted the deposition testimony of Marshall, wherein he stated that on the morning of the subject accident, he was driving the speed limit, and after crossing the twin span bridge, he did not notice anyone else traveling on I — 10. Marshall stated that thereafter, he suddenly hit a thick fog and he could not see anything. |nMarshall stated that he did not see the fog before entering into it nor did he see any vehicles or objects disappear into the fog ahead of him. After he entered the fog, .Marshall stated that he applied his brakes and tried to slow down while maintaining control of his vehicle and trailer. According to Marshall, two seconds after entering the fog, he saw two faint taillights and attempted to apply his brakes harder, but he ultimately hit the Crawley vehicle, which had stopped in his lane of travel. Marshall stated that within one second of impacting the Crawley vehicle, he felt an impact from the rear.
Marshall’s testimony was corroborated by the deposition testimony of the other drivers involved in the subject accident: David Porter, James Pitts, Roy Poole, and Ernest Wilkes. All of these'drivers stated that after crossing the twin span bridge on 1-10, they were suddenly confronted with a thick fog that reduced their visibility to zero. All of these drivers stated that they could not see the cloud of smoke/fog before entering into it, and that upon entering the fog, they could not see. anything beyond the hood of their vehicles.
In opposition to Max Trans and Marshall’s motion for summary judgment, plaintiffs asserted that the sudden emergency doctrine does not apply to the instant case because had Marshall observed warning signs and appreciated the risk of danger ahead, he could have avoided an accident. In support of this argument, plaintiffs submitted the deposition testimony of Robert Arrington, III, the driver of a vehicle that had stopped on the interstate prior to the accident at issue. Arrington stated that earlier that morning he had heard over his CB radio that there was an accident in the area, although he was not sure as to the location of the accident. Then, about 2-3 miles before he arrived at the accident site, he smelled smoke. Ar-rington also stated that thereafter, he saw two eastbound vehicles emerging from the *767 fog with their four-way flashers on and driving approximately, 10 to 15 mph. Ar-rington stated that he could see the haze through the lights of the cars that were h ^merging, and then he could see the haze in his headlights as he drove into it. As he drove into the haze, Arrington stated that he put his four-way flashers on and reduced his speed. Arrington stated that when the haze, got so thick as to affect his visibility, he came to a “panic stop” in the right lane. .When he brought his vehicle to a stop, Arrington stated that he .had passed through the thick area of the fog and could see again. Arrington stated that other drivers were coming to a stop or making u-tums in the median, and that the cars that had come to a stop were lining up behind him in the right lane and in the middle lane. Arrington noted that cars behind him started to “thump.”
However, Arrington also acknowledged that he arrived at the accident before the Crawley vehicle stopped in the middle lane, and that it was more than four minutes between when he stopped and when the Crawley vehicle hit him. Arrington stated that he did not see the Crawley vehicle before it hit him. Additionally, Ar-rington acknowledged that as he stopped his vehicle, the wind “swirled” and he could see what was ahead of him, although a portion of his trailer was still in the area of zero visibility.
In addition to the deposition testimony of Arrington, plaintiffs attempted to submit the deposition of Crawley in support of their argument that the sudden emergency doctrine is inapplicable to Marshall in the instant ease. The trial court, however, ruled that the Crawley deposition was inadmissible because it had not been taken for purposes of this case and/or had not been filed into this suit record as part of an opposition to this motion for summary judgment. Because plaintiffs did not reference or attempt to file into the record the Crawley deposition until the day of the hearing on- Max Trans and Marshall’s motion for summary judgment, we find no abuse of discretion by the trial court in ruling that the deposition was inadmissible. See La. C.C.P. art. 966(B); Buggage v. Volks Constructors, 06-0175 (La. 5/5/06), 928 So.2d 536 (per curiam) (noting that the time limitations | ^established by La. C.C.P. art. 966(B) for serving affidavits in opposition .to a motion for summary judgment are mandatory and that affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court)..
Accordingly, from our de novo review of the admissible evidence admitted into the record for purposes of the motion for summary judgment, we find that plaintiffs have failed to come forward with evidence establishing that there is a genuine issue as to material fact that the sudden, thick fog resulted in zero visibility and created a sudden emergency. Arrington’s -testimony as to his observations prior to and upon his arrival does not create a genuine issue as to what Marshall observed prior to and upon his arrival at the scene of the accident more than four minutes later. As Arrington acknowledged in his testimony, the direction of the fog changed after he came to a stop, resulting in him being able to see ahead of his vehicle, which indicates that the condition of the fog was not constant during the time leading up to the accident at issue. Further, while Arrington stated that he was aware of the fog prior to entering into it because he observed eastbound drivers emerging from it, there is no evidence that over four minutes later, when Marshall arrived on the scene, that cars were driving in the eastbound lanes such.that Marshall had an opportunity to observe similar conditions.
Rather, all of the drivers who arrived at the scene of the accident at the same time *768 as or within seconds of Marshall agreed that they were suddenly confronted with a thick fog that reduced their visibility to zero. None of these drivers saw other vehicles on the interstate nor did they see the fog before entering into it. Accordingly, there is no conflict in the testimony as to what conditions existed at the time Marshall arrived at the scene of the accident and that those conditions constituted a sudden emergency.
Once confronted with the fog, Marshall reacted by applying his brakes so as to maintain control of his truck and trailer, and upon seeing brake lights in front of 112him, attempted to apply his brakes harder so as to avoid a collision, although unsuccessfully. Arrington’s deposition testimony, as well as the testimony of the other drivers, established that they too applied their brakes once confronted with zero visibility, ■ and that they, as well as other vehicles, had come to a stop in the travel lanes of the interstate. Therefore, there is no conflicting evidence that once confronted with zero visibility conditions, Marshall acted in a reasonably prudent manner in attempting to slow down and upon seeing taillights, in attempting to bring his vehicle to a stop.
Accordingly, because plaintiffs failed to come forward with evidence creating a genuine issue as to material fact that Marshall created the emergency due to his own negligence, or that once he was confronted with the emergency that he did not react as a reasonably prudent person would react, the trial court was correct in finding that Max Trans and Marshall were entitled to summary judgment. See McCann v. State Farm Mutual Automobile Insurance Co., 483 So.2d 205, 211 (La. App. 3rd Cir.), writ denied, 486 So.2d 734 (La. 1986).[3]
Finally, plaintiffs contend that the trial court erred in failing to include language in the judgment indicating that due to its granting of summary judgment in favor of Max Trans and Marshall based upon a finding that Marshall is not negligent due to a sudden emergency, Max Trans and Marshall shall not be considered in any subsequent allocation of fault. According to La. C.C.P. art. 966(G):
|1S(1) When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or nonparty is not negligent, not at fault, or did not cause, whether in whole or in part, the injury or harm alleged, that party or nonparty shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty nor shall the issue be submitted to the jury nor included on the jury verdict form. This Paragraph shall not apply when a summary judgment is granted solely on the basis of the successful assertion of an affirmative defense in accordance with *769 Article 1005, except for negligence or fault.
(2) If the provisions of this Paragraph are applicable to the summary judgment, the court shall so specify in the judgment. If the court fails to specify that the provisions of this Paragraph are applicable, then the provisions of this Paragraph shall not apply to the judgment.
In their brief to this court, Max Trans and Marshall specifically stated that they have no objection to this Court requiring the judgment to be modified to include the requested language. Accordingly, because both parties agree to include the language as requested by the plaintiffs, we amend the trial court’s judgment to reflect that Max Trans and Marshall shall not be considered in any subsequent allocation of fault pursuant to La. C.C.P. art. 966(G).
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Max Trans and Marshall and dismissing plaintiffs’ claims against them with prejudice. Further, we amend the trial court’s judgment to state that, due to the court’s finding that Max Trans and Marshall are not negligent, they shall not be considered in any subsequent allocation of fault pursuant to La. C.C.P. art. 966(G). All costs of this appeal are assessed to Scott and Beth Lowe.
AFFIRMED AS AMENDED.

. According to the record, although copies were provided to counsel and to the court, plaintiffs did not file their opposition to Max Trans and Marshall's re-urged motion for summary judgment into the record until September 10, 2015.

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article as applicable in this case. See Acts 2015, No. 422, §§ 2 and 3.

. Plaintiffs also assert on appeal that the trial court erred in rendering summary judgment on an issue that was not properly before the court on the motion for summary judgment and erred in considering evidence outside of the record. Plaintiffs' assertions are based on the trial court’s oral and written reasons for judgment, wherein she described the conditions present on the date of the accident as arising to an act of God and wherein she referenced news reports and press releases relating to the smoke produced in the area. However, it is well recognized that reasons for judgment form no part of the official judgment, and that appeals are taken from judgments, not reasons for judgment. See Doe v. Breedlove, 04-0006, p. 9 (La.App. 1 Cir. 2/11/05), 906 So.2d 565, 571. Accordingly, because on appeal we have conducted a de novo review of the summary judgment at issue, we find no merit in plaintiffs' assignments of error in regard to these issues.